# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LAMARR VALDEZ ROBINSON,

Defendant-Appellant.

UNPUBLISHED
October 22, 2015

No. 321841
Wayne Circuit Court
LC No. 10-006297-FC

Before: FORT HOOD, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

A jury convicted defendant of assault with intent to commit murder, MCL 750.83, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to concurrent terms of 47-1/2 to 120 years' imprisonment for the assault and felon-in-possession convictions, to be served consecutive to two years' imprisonment for the felony-firearm conviction. Defendant appeals as of right. We affirm.

A jury convicted the 39-year-old defendant of shooting 20-year-old Jamel Chubb at a Detroit gas station on May 13, 2010. The prosecution presented evidence that defendant and Chubb were both dating 19-year-old Jessica Taylor, whom defendant had been dating for a couple of years. Defendant learned about the relationship between Taylor and Chubb, and thereafter followed them on multiple occasions and sent several text messages to both Taylor and Chubb. On the day of the shooting, the men had a brief encounter at Taylor's mother's Livonia residence. Upon leaving, defendant told Taylor, "Don't let me catch y'all in the hood." Later that day, Chubb, Taylor, Jasmine Miller, and Kayana Davies were all at Miller's Detroit residence, and ultimately went to a local gas station. The gas station surveillance video captured an individual wearing a hoodie and riding a bike approach Chubb and shoot him as he was pumping gas. Taylor, who was in the front passenger seat of the vehicle, identified defendant as the shooter. Cellular phone tracking evidence also placed defendant in the area of the gas station at the time of the shooting. The defense theory at trial was misidentification, and the defense argued, inter alia, that Taylor's identification was not credible and the cell phone tracking evidence was not reliable.

## I. EFFECTIVE ASSISTANCE OF COUNSEL

-1-

Defendant raises three separate ineffective assistance of counsel claims in his principal brief on appeal. Because he failed to raise these claims below in a motion for a new trial or request for an evidentiary hearing, our review is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013), citing *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Nix*, 301 Mich App at 207. "A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

## A. EXPERT WITNESS

Defendant argues that defense counsel was ineffective for failing to object to the admission of Larry Smith's expert testimony or request a *Daubert*[1] hearing regarding that testimony. We disagree. At trial, the court qualified Smith as an expert in "the workings of Metro PCS" and how its records are stored, recorded, and registered. Smith thereafter provided cell phone tracking testimony that placed defendant in the area of the gas station at the time of the shooting.

"[T]he determination regarding the qualification of an expert and the admissibility of expert testimony is within the trial court's discretion." *People v Murray*, 234 Mich App 46, 52; 593 NW2d 690 (1999). MRE 702 governs the admissibility of expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

MRE 702 requires "a court evaluating proposed expert testimony [to] ensure that the testimony (1) will assist the trier of fact to understand a fact in issue, (2) is provided by an expert qualified in the relevant field of knowledge, and (3) is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case." *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012). This inquiry, however, is a flexible one and must be tied to the facts of the particular case; thus, the factors for determining reliability may be different depending upon the type of expert testimony offered, as well as the facts of the case. *Id.*, citing

---

[1] *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

*Daubert v Merrell Dow Pharm, Inc*, 509 US 579, 591; 113 S Ct 2786; 125 L Ed 2d 469 (1993); *Kumho Tire Co v Carmichael*, 526 US 137, 150; 119 S Ct 1167; 143 L Ed 2d 238 (1999).[2]

Defendant has not overcome the strong presumption that trial counsel's performance was within the range of reasonable professional conduct. *Payne*, 285 Mich App at 190. We are disinclined to declare that testimony of this nature should be considered "junk science," as requested by defendant. Defendant cannot direct this Court's attention to any Michigan case where cell phone tracking evidence presented by an expert witness has been rejected. Further, Smith's testimony, which was based on the cell phone records as well as Smith's specialized knowledge regarding Metro PCS cell phone towers, helped the jury understand information at issue in the case that an average juror would not have previously known. See *Kowalski*, 492 Mich at 121 (proffered testimony must involve a matter that is beyond the common understanding of the jury). For example, average jurors do not have the benefit of being trained in the functions of cell phone towers, derivative tracking, and techniques of locating or plotting origins of cell phone calls using cell phone records. Smith testified regarding these methods, and explained how this data was reflected in the cell phone records. Thus, Smith provided reliable testimony that assisted the jurors in understanding how defendant's cell phone records placed him (or his phone) in the area of the shooting.

Further, even assuming that defense counsel should have objected, defendant cannot show the probability that, but for counsel's errors, the result of the proceedings would have been different. *Nix*, 301 Mich App at 207. Defendant has not sufficiently challenged Smith's qualifications to render an opinion using cell phone records and towers to track locations. As defendant observes, Smith testified that he was a Metro PCS "custodian of records," and had been employed by the company for approximately three years. Smith explained that his position included the "storage and accuracy of [Metro PCS] phone records, such as subscriber information, call detail records, and text messages." Before defense counsel stipulated to Smith's qualifications, however, Smith testified that he had been trained in "how [Metro PCS] cellphone towers work," and "how handsets that belong or are purchased through Metro PCS register with those towers." He had also trained others on how the cellphone towers work. A witness is qualified to testify as an expert based on knowledge, skill, experience, training, or education. MRE 702. Because Smith's testimony demonstrated that he was qualified to provide the challenged cell phone tracking testimony based on his experience and training, any objection by defense counsel to Smith testifying in that capacity or to request a *Daubert* hearing would have been futile. Counsel is not ineffective for failing to raise a meritless objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## B. ADMISSION OF EVIDENCE

---

[2] Indicia of reliability relevant to scientific fields include testability, publication, and peer review, known or potential rate of error, and general acceptance in the field. *Daubert*, 509 US at 593-594. The United States Supreme Court has explained, however, that reliability concerns may differ depending on the type of expertise offered, and whether that expertise is based on personal knowledge, experience, or skill. *Kumho Tire Co*, 526 US at 150.

## 1. TAYLOR'S TESTIMONY AND EVIDENCE OF TEXT MESSAGES

During trial, Taylor testified about her relationships with both defendant and Chubb, and regarding numerous text message exchanges that occurred between the parties in the days leading up to the shooting. Defendant highlights that Taylor testified regarding a text exchange on May 6, 2010, when she and defendant discussed that she might have a sexually transmitted disease (STD), and that defendant referenced her hanging around Chubb. She and defendant later went to a clinic. Defendant blamed her for the STD, but based on the report, she knew she had gotten it from him. Taylor also testified that defendant recorded them having sex without her knowledge. Taylor stated that defendant told her to tell Chubb she was pregnant and she did so, even though she was not pregnant. Defendant further highlights that Smith read through several text messages exchanged between Taylor's, defendant's, and Chubb's phones, and text messages exchanged between defendant's and other women's cell phones.

Generally, all relevant evidence is admissible unless otherwise provided for in the court rules or the state or federal constitutions. MRE 402; *People v Yost*, 278 Mich App 341, 355; 749 NW2d 753 (2008). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. However, even if evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" MRE 403. Here, we conclude that the challenged evidence was relevant to factual issues in this case. While defendant highlights certain evidence, he ignores other evidence that ties in with the emphasized evidence, which shows the complete picture that the prosecution was trying to give the jury. The prosecution theorized that defendant's attempted manipulation and control of Taylor and Chubb culminated in a state of mind that led him to shoot Chubb, which was directly relevant to the prosecution's theory of the case and correspondingly weakened defendant's theory of the case. The evidence, presented in Taylor's testimony and text messages, provided context for the jury to understand the parties' relationship, and how defendant attempted to stop Taylor from seeing Chubb. The evidence also demonstrated that defendant was jealous of Taylor's relationship with Chubb and the level of animosity defendant had toward Chubb, which was probative of motive and intent. Regarding the existence of a sex tape, on the day of the shooting, defendant texted Chubb that he would release his and Taylor's sex tape as his frustration grew about Taylor and Chubb's relationship. Thus, Taylor's testimony about the existence of a sex tape was relevant. Defendant's defense of misidentification enhanced the value of the evidence, as the evidence tended to shed light on the likelihood that defendant committed the crimes.

Further, we are not persuaded that the evidence was unduly prejudicial. All evidence offered by the parties is prejudicial to some extent, but, pursuant MRE 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). Unfair prejudice exists where there is "a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury" or "it would be inequitable to allow the proponent of the evidence to use it." *Id*. at 75-76. We are not persuaded that the jury would not have been able to rationally weigh the

evidence. Accordingly, defendant has not shown that defense counsel's failure to object to the evidence was objectively unreasonable. *Nix*, 301 Mich App at 207.[3]

## 2. SABRINA JOHNSON'S TESTIMONY ABOUT A SEX TAPE

Defendant argues that defense counsel should have objected to the prosecutor eliciting from his stepmother her knowledge that defendant had a sex tape featuring celebrity Kim Kardashian. Defendant argues that "[t]he introduction of evidence regarding celebrities and their sexual proclivities presented a substantial risk of distracting and confusing the jury, and had no probative value." Defendant's argument is without merit. Defendant's stepmother's testimony was directly related to text messages that defendant sent before and after the shooting. As defendant was exchanging hostile text messages with Chubb, Chubb stopped responding. The last text that defendant sent, which he sent twice, stated, "Oh, yeah, I'm puttnn [sic] our sex tape in the hood and the net." Approximately a half hour after the shooting, defendant had a text exchange with his stepmother. During the exchanges, they discussed a sex tape and Kim Kardashian. The prosecutor theorized that, based on the evidence, defendant and his stepmother were discussing the sex tape that defendant possessed of him and Taylor. In closing argument, the prosecutor asked the jury to notice the similarity in appearance between Kardashian and Taylor. Thus, contrary to what defendant suggests, Johnson's testimony was not a random interjection about defendant owning a celebrity sex tape, but was relevant to a text message exchange that occurred in close proximity to the shooting and was probative to defendant's state of mind. We also disagree with defendant's argument that the evidence should have been excluded under MRE 403 because it was unduly prejudicial. Accordingly, defendant has not shown that defense counsel's failure to object to the evidence was objectively unreasonable. *Nix*, 301 Mich App at 207.

## 3. MILLER'S TESTIMONY

Miller, a friend of Taylor and Chubbs, testified that Taylor had lived with her and with defendant at times. When testifying about whether she had texted defendant directly, she testified:

> *A.* One night [defendant and Taylor] had got into a fight, and I'm not quite sure exactly what they were fighting about. But they got into a fight, and I had told him like instead of you putting your hands on her and, you know degrading her, then you can send her to my house.

---

[3] Defendant makes a general statement that the challenged evidence was also inadmissible pursuant to MRE 404(a), but does not specifically analyze the evidence under the court rule. MRE 404(a) provides that "[e]vidence of a person's character or a trait of character is not admissible for the purposes of proving action in conformity therewith[.]" Our review of the record reveals that that the evidence was not offered to show that defendant acted in conformity, contrary to MRE 404(a).

*Q.* So, you would communicate with the defendant by text?

*A.* Yes, I have.

We agree that Miller's testimony about defendant fighting Taylor at some unspecified time could be considered objectionable. MRE 404(b). But applying the appropriate level of deference to defense counsel's decision made during the course of trial, his failure to object to the testimony does not establish ineffective assistance of counsel. Defense counsel reasonably could have opted at that moment to avoid placing emphasis on, and highlighting to the jury, that one brief statement. "[T]his Court will not second-guess defense counsel's judgment on matters of trial strategy." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). Consequently, defendant cannot establish a claim of ineffective assistance of counsel.

## C. PROSECUTORIAL MISCONDUCT

Defendant next contends defense counsel was ineffective for failing to object to the prosecutor improperly "referenc[ing] facts not in evidence" and appealing to the juror's sympathy in opening statement and closing argument.

Defendant argues that, in opening and closing argument, the prosecutor referenced facts not in evidence. A prosecutor may not argue facts that are not supported by the evidence, but is free to argue the evidence and all reasonable inferences arising from it as it relates to the prosecutor's theory of the case. *People v Unger*, 278 Mich App 210, 236, 241; 749 NW2d 272 (2008). Further, the prosecutor need not state their inferences in the blandest possible language. *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). When reviewing a prosecutor's remarks, "this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id.* at 64. Defendant, generally, asserts that the prosecution argued that defendant was a controlling, possessive, and manipulative boyfriend, which he claims was not supported by the evidence. We disagree. Substantial evidence was submitted on the record which could lead to a reasonable inference that defendant was jealous of Taylor's relationship with Chubbs, which the prosecutor argued was his motive for the crime.

Defendant raises several specific instances of prosecutor misconduct. During closing argument, the prosecutor stated that defendant took the same path as the shooter, which defendant asserts was unsupported by the record. However, contrary to defendant's assertion, the prosecutor's remarks regarding defendant's location were supported by Smith's testimony and the cell phone records, and reasonable inferences arising from the evidence. The prosecutor's argument that Taylor was "able to see" the shooter's face was based on Taylor's testimony that she saw defendant's face. The prosecutor's argument that defendant had "facial hair right around his chin like [witness Tremaine Maddox] said" the shooter had was a reasonable inference from the evidence that defendant had facial hair on the date of the shooting and Maddox's description of the shooter as having a full facial beard. Defendant contends that there was no evidence from which the prosecutor could infer that defendant had left a hickey on Taylor's neck on the day of the shooting, but Taylor testified that defendant put a hickey on her

-6-

neck on May 13, 2010, and Miller testified that Taylor had a "big purple mark on her neck" that day. Also, in a text message to Chubb, defendant himself wrote, "How u think she got the hicky fool & when u was knockin I was bustn." The prosecutor's references to other women, relationships, or phone numbers, e.g., "Terri" and "Nicole," were direct references from testimony and text messages that were admitted into evidence. Taylor testified that she knew Nicole Waller was the mother of defendant's children and had spoken to her on the phone before. Accordingly, we conclude that the prosecutor's remarks were not clearly improper.

To the extent that the prosecutor's remarks could be considered impermissible references, defendant cannot demonstrate that there is a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different. *Nix*, 301 Mich App at 207. Despite defense counsel's failure to object, the trial court instructed the jury that the lawyers' statements and arguments are not evidence, that the jury was to decide the case based only on the properly admitted evidence, and that the jury was to follow the court's instructions. It is well established that jurors are presumed to follow their instructions. *Unger*, 278 Mich App at 235. Consequently, defendant has failed to establish an ineffective assitance of counsel claim.

Defendant also argues that defense counsel was ineffective for failing to object to the prosecutor's comments that improperly appealed to the jury's sympathy. Specifically, defendant points to comments that were made during rebuttal argument that "went to great lengths to cast aspersions upon [defendant's] general character that the judge chose to interrupt to ask the prosecutor to rephrase her rebuttal statement." Before the trial court intervened, the prosecutor had stated:

> Do you remember Jasmine Mille saying, you know, you hear the shots, and they kind of register in your head, and then you get down. Okay. This happened very quickly. There is nothing inconsistent about Kayana's testimony and Jessica's testimony. And I want you to think real hard about why this girl was so scared to get up here and even look in that man's direction.

> You can end the terror. You can end the defendant's reign of terror. It's up to you. This is a one-shot deal. If you do not give justice to Jamel, if you do not bring back a verdict of guilty today—

> *The court*: Excuse me, Counsel.

> *The prosecutor*: Yes, Judge.

> *The court*: You're going to rephrase your argument.

> *The prosecutor*: Thank you.

Prosecutors may not resort to arguments that ask jurors to sympathize with the victim. *Dobek*, 274 Mich App at 79. However, here, even if the prosecutor's argument could be considered objectionable, the trial court intervened and directed the prosecutor to rephrase her argument. Further, the trial court's instructions that the lawyers' statements and arguments are not evidence, and that the case should be decided on the basis of the evidence were sufficient to dispel any possible prejudice. *Unger*, 278 Mich App at 235. Therefore, defendant cannot

demonstrate that there is a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different. Consequently, defendant has failed to establish an ineffective assitance of counsel claim.

## II. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. We disagree with defendant's additional claims.

## A. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecutor presented insufficient evidence that he was the person who shot Chubb. We disagree. Challenges to the sufficiency of the evidence are reviewed de novo to "determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Russell*, 297 Mich App 707, 721; 825 NW2d 623 (2012) (citation omitted). "This Court reviews the evidence in the light most favorable to the prosecution." *Id*.

Defendant challenges only whether there was sufficient evidence to establish his identify as the shooter. "[I]dentity is an element of every offense." *Yost*, 278 Mich App at 356. Therefore, it is axiomatic that the prosecution must prove the identity of the defendant as the perpetrator of the charged offense beyond a reasonable doubt. See *Russell*, 297 Mich App at 721. Positive identification by a witness may be sufficient to support a conviction of a crime. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). "The credibility of identification testimony is for the trier of fact to resolve that we do not resolve anew." *Id*.

Taylor unequivocally identified defendant as the shooter at trial. Taylor was sitting in the front seat of Chubb's car, while Chubb was standing on the side of the vehicle, pumping gas. Defendant approached on a bike and, as Chubb's body fell, Taylor saw defendant's face. Taylor testified that she had no trouble perceiving what occurred. Taylor had been in an intimate relationship with defendant for two years. From this evidence, a jury could reasonably infer that Taylor was familiar with defendant and could identify him under the circumstances. Although defendant emphasizes that Taylor did not initially identify him as the shooter, Taylor explained that she did not initially identify defendant because she feared retribution. After deciding to come forward, Taylor consistently identified defendant as the shooter to the police, at the preliminary examination, and at trial. The jury was free to believe or disbelieve Taylor's testimony, including her explanation for her belated identification of defendant as the shooter. The credibility of identification testimony is a question of fact for the jury, and Taylor's testimony, if believed, was sufficient to establish defendant's identity as the shooter. Further, apart from Taylor's positive and unequivocal identification of defendant, the prosecution presented evidence that a cell phone linked to defendant was in the area at the time of the shooting and that defendant had communicated via text about obtaining a .45-caliber gun—the same caliber that was used to shoot Chubb. Accordingly, when viewed in a light most favorable to the prosecution, there was sufficient evidence for the jury to identify defendant as the perpetrator beyond a reasonable doubt.

## B. INEFFECTIVE ASSISTANCE – FAILURE TO CALL WITNESSES

Defendant next argues that defense counsel should have called Vanessa Hudson and Nicole Waller (his former girlfriend) as alibi witnesses; Tracey Mayes, Jasmine Gradford, and Charles Mitchell as res gestae witnesses; himself; and an expert witness. Defendant avers in an affidavit submitted with his standard 4 brief that he informed defense counsel about Hudson, Waller, and Mayes. Thus, accepting defendant's claim, defense counsel was aware of the proposed witnesses. "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *Russell*, 297 Mich App at 716. Trial counsel's failure to a call a witness is only considered ineffective assistance if it deprived the defendant of a substantial defense. *Id.* "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). Defendant attempts to establish the factual predicate for his claim with affidavits from Hudson, Mayes, and himself, which are attached to his standard 4 brief. It is, however, "impermissible to expand the record on appeal." *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999). But even considering these affidavits, defendant's ineffective assistance claim fails.

With regard to the proposed alibi witnesses, defendant has not overcome the presumption that defense counsel purposely declined to call Hudson and Waller as a matter of sound trial strategy. The failure to call an alibi witness does not constitute ineffective assistance of counsel if counsel reasonably believes that the purported alibi witness will not provide an effective alibi. *People v McMillan*, 213 Mich App 134, 141; 539 NW2d 553 (1995). Hudson avers that she went to Waller's house "around 3:30 or 4 p.m." to explain to Waller why defendant had her dance clothes and her van, and that she thereafter left with defendant to pick up parts for defendant to fix her van. Hudson further avers that she was with defendant "from 4 to 5:30 p.m." Defendant avers that he texted Hudson, "911 where are u," because Waller was threatening to burn Hudson's dance clothes. The cell phone records show that defendant sent this "911" text at 5:28 p.m., contrary to Hudson's declaration that she and defendant were already together. It would have been reasonable for counsel to anticipate that the prosecutor would question the credibility of Hudson, and counsel reasonably may have determined that the credibility issues would have seriously undermined any progress defense counsel had made in presenting the misidentification defense and discrediting the prosecution's witnesses. The fact that a defense strategy ultimately fails does not establish ineffective assistance of counsel. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001). Further, there is no record evidence that defendant's former girlfriend, Waller, was both available and willing to testify favorably on defendant's behalf. Defendant has not provided a witness affidavit from her, or identified any other evidence of record establishing that she actually could have provided favorable testimony at trial. Defendant has not established that he was prejudiced by defense counsel's failure to call this witness at trial.

With regard to the proposed res gestae witnesses, Mayes averred in an affidavit that he observed Taylor "duck face forward" after shots were fired, which defendant sought as support for a conclusion that Taylor could not have seen the shooter. Mayes's testimony, even if assumed true, would have been cumulative to the testimony of Davies that Taylor ducked down. Other than providing information that was adequately covered through another witness, defendant does not state what new helpful information Mayes could have offered that would have affected the outcome of the trial. With regard to Gradford and Mitchell, there is no record

evidence that either proposed witness was both available and willing to testify favorably on defendant's behalf. Absent such a showing, defendant has not established that he was prejudiced by defense counsel's failure to call the witnesses at trial.

Defendant, as a criminal defendant, had a fundamental constitutional right to testify at trial. US Const, Am XIV; Const 1963, art 1, §§ 17, 20. "Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla–Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). "[I]f defendant . . . decides not to testify or acquiesces in his attorney's decision that he not testify, the right will be deemed waived." *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985) (citation and quotations omitted).

There is no basis to conclude that counsel's performance deprived defendant of his constitutional right to testify. The record shows that, after the prosecution rested, defense counsel stated on the record that he and defendant had discussed whether defendant was going to testify and that defendant had elected not to testify. Defendant acknowledged to the court that he did not want to testify. Defendant never expressed disagreement with counsel's statement that he did not wish to testify, did not claim that he was ignorant of his right to testify, or that defense counsel had coerced him into not testifying. The decision whether to call defendant as a witness was a matter of trial strategy and defendant has not identified or offered any evidence to overcome the strong presumption of sound strategy. *Payne*, 285 Mich App at 190.

Defendant has not made an offer of proof regarding the substance of any favorable testimony that an expert witness on cell phones could have offered. A defendant cannot establish his claim of ineffective assistance of counsel using speculation that an expert would have testified favorably. *Id*. Moreover, defendant has failed to overcome the presumption that defense counsel's decision not to call an expert witness was reasonable trial strategy. *Id*. Through means of cross-examination, defense counsel challenged the strength and reliability of the cell phone tracking evidence, and elicited arguable bases for the jurors to question its accuracy. For example, defense counsel elicited on cross-examination that the cell phone tower information did not allow Metro PCS to pinpoint the exact point from where a call was made. Defendant has failed to show that defense counsel's strategy was objectively unreasonable, or that he was prejudiced by the absence of an expert at trial.

Finally, we reject defendant's argument that the cumulative effect of several minor errors denied him a fair trial. Because multiple errors have not been found, there can be no cumulative effect that denied defendant a fair trial. *Unger*, 278 Mich App at 258.

## C. PROSECUTOR'S MISCONDUCT

As defendant acknowledges, he did not object to prosecutor misconduct at trial. We review unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013). Reversal is not required "where a curative instruction could have alleviated any prejudicial effect." *People v Bennett*, 290 Mich App 465, 476; 802 NW2d 627 (2010).

## 1. PERJURY

Defendant argues that the prosecutor knowingly presented perjured testimony by Taylor. We disagree. A defendant's right to due process "is violated when there is any reasonable likelihood that a conviction was obtained by the knowing use of perjured testimony." *People v Gratsch*, 299 Mich App 604, 619; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013). Thus, a prosecutor has "an obligation to correct perjured testimony that relates to the facts of the case or a witness's credibility." *Id.*

In his argument, defendant highlights instances where Taylor's testimony about the identification of the shooter differed from her initial police statement, in which she did not identify defendant as the shooter, or that her claim that she could see the shooter was debilitated by other eyewitnesses who stated that all the witnesses ducked down. However, the inconsistencies listed by defendant do not establish that the prosecutor knowingly used perjured testimony to obtain defendant's conviction. *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998). Although Taylor's trial testimony that defendant was the shooter differed from her initial statement to the police, there was no indication that the prosecutor sought to conceal this inconsistency from defendant. *Id.* In fact, during direct examination, Taylor admitted that she did not initially tell the police that defendant was the shooter because she was afraid. Additionally, testimony that conflicts with other witnesses' testimony does not lead to the conclusion that the prosecutor knowingly used perjured testimony. The prosecution is not obligated to disbelieve its own witness merely because the witness's testimony is contradicted by testimony from another witness. See *People v Lester*, 232 Mich App 262, 278-279; 591 NW2d 267 (1998), overruled in part on other grounds in *People v Chenault*, 495 Mich 142; 845 NW2d 731 (2014). Defendant's argument does not involve an issue of perjury, but of credibility. Defense counsel fully explored the credibility problems with Taylor's testimony, as well as other prosecution witnesses, and the jury had an opportunity to observe the video recording of the shooting. This Court will not "interfere with the jury's determinations regarding . . . the credibility of the witnesses." *Unger*, 278 Mich App at 222.

## 2. "OTHER ACTS OF PROSECUTORIAL MISCONDUCT"[4]

Defendant contends that the prosecutor improperly misled the jury during opening statement when she made several statements that were not supported by the record. "Opening statement is the appropriate time to state the facts that will be proved at trial." *Ericksen*, 288 Mich App at 200. When a prosecutor states that evidence will be presented that later is not presented, reversal is not required if the prosecutor acted in good faith and the defendant was not prejudiced by the statement. *People v Wolverton,* 227 Mich App 72, 76-77; 574 NW2d 703 (1997).

Defendant points to several comments by the prosecutor during opening statement that he claims were improper. For example, the prosecutor stated that defendant was threatening the victim, that defendant called Chubb "little boy" as they were discussing Taylor, that Taylor texted "leave us alone," and that, after the shooting, defendant sent a text message bragging

---

[4] We decline to readdress those issues of prosecutorial error that were also raised by appellate counsel and have already been addressed in this opinion.

about the shooting. Contrary to what defendant argues, the prosecutor's statements, viewed in context, were clearly designed to show what she intended to prove during trial. Subsequently, the prosecutor presented evidence of numerous text messages, including those that showed that defendant taunted Chubb, texted "News 2, 4, 7" after the shooting, and Taylor's testimony that she texted "leave us the f*ck alone" using Chubb's phone. Even if the evidence did not develop exactly as the prosecutor stated during opening statement, defendant has not shown that the prosecutor acted in bad faith in making the statements, or that he was prejudiced. *Id*.

Defendant also asserts that the prosecutor's statement that "We know where you are when you make a phone call, or the area that you're in when you make a phone call," was improper. The prosecutor's reference, also made during opening statement, was designed to show that she intended to prove during trial that a cell phone linked to defendant was in the area of the BP gas station at the time of the shooting, and that, after the shooting, the cell phone was pinned in the same direction in which the shooter fled. During trial, the prosecutor presented evidence of defendant's cell phone records, maps of cell phone towers and where the phone registered, and the expert testimony of Smith, who interpreted the information for the jury. Smith explained that defendant's cell phone was in the area of the BP gas station around the time of the shooting, registered at a tower southwest of the gas station after the shooting, and registered at a different tower southwest of the gas station a half hour later. Given this evidence, defendant has not shown that the prosecutor acted in bad faith in making the emphasized statement. *Id*. Accordingly, defendant has not established plain error affecting his substantial rights in regard to the prosecutor's opening statement.

Defendant next lists several comments made by the prosecutor during closing argument where defendant contends that the prosecutor impermissibly expressed her personal opinion about the case with inflammatory and unsupported remarks that were highly prejudicial. For example, defendant notes that the prosecutor argued that defendant was angry, exhibited actions of someone who did not fairly fight a younger 20-year-old man, and was manipulating Taylor; she also suggested views of the meaning of certain text messages. Although prosecutors may not express a personal opinion about a defendant's guilt, *People v Bahoda*, 448 Mich 261, 282-283; 531 NW2d 659 (1995), they are afforded great latitude when arguing at trial, *Dobek*, 274 Mich App at 66. In arguing this claim, defendant ignores that prosecutors may argue the evidence and all reasonable inferences that arise from the evidence as it relates to their theory of the case, and they need not state their inferences in the blandest possible language. *Id*. After reviewing the record, including the comments cited by defendant, we conclude that the prosecutor's remarks were part of a permissible argument that was focused on presenting the prosecutor's theory of the case, based on the evidence and reasonable inferences arising from it, and countering defendant's claim that Taylor misidentified him. The prosecutor's argument, which urged the jurors to use their common sense in evaluating the evidence, was responsive to the theories presented at trial and, viewed in context, was not clearly improper.

Defendant also argues that, during rebuttal argument, the prosecutor impermissibly referred to the defense argument as a "red herring." The prosecutor used the phrase in the following context:

The marijuana in this case, that is a *red herring*.  Everyone told you that the marijuana belonged to Jessica.  Jessica told you, "That marijuana belonged to me."

* * *

Now, I don't mean to thumb my nose at the law . . . .  Kids get high.  Kids smoke marijuana.  Hey, this does not make them the drug dealer of the century to be targeted for a drug hit.  Okay?

This is a personal shooting done by someone who had a personal ax to grind . . . .  [Emphasis added.]

Although it is generally improper for a prosecutor to argue that defense counsel has attempted to mislead the jury through the use of "red herrings," *Unger*, 278 Mich App at 238, a "prosecutor may fairly respond to an issue raised by the defendant." *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008).  Further, an otherwise improper remark might not warrant reversal if the prosecutor is responding to the defense counsel's argument.  *Dobek*, 274 Mich App at 64; *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996).  Viewed in context, the prosecutor's remark, made during rebuttal argument, did not suggest that counsel was trying to mislead the jury, but fairly responded to defense counsel's suggestion in his closing argument that the "execution style" shooting could have been related to Chubb buying or selling drugs, or owing someone money.  The prosecutor's remark was responsive to an isolated part of counsel's closing argument, and was based on reasonable inferences from the evidence.  *Unger*, 278 Mich App at 236.  Consequently, the prosecutor's remark was not clearly improper.

Further, even if any of the prosecutor's challenged remarks were improper, the trial court's instructions that the lawyers' statements and arguments were not evidence and that the case should be decided on the basis of the evidence were sufficient to dispel any possible prejudice.  See *id*. at 235.  Accordingly, defendant cannot establish plain error affecting his substantial rights on the basis of the prosecutor's challenged comments.  In addition, multiple errors have not been found, so there can be no cumulative effect that denied defendant a fair trial. *Dobek*, 274 Mich App at 107.

## D.  SENTENCING

Defendant next argues that he is entitled to resentencing because the trial court engaged in impermissible judicial fact-finding to score the sentencing guidelines, contrary to *Alleyne v United States*, 570 US___; 133 S Ct 2151; 186 L Ed 2d 314 (2013).  Because defendant did not object to the scoring of the guidelines at sentencing on the basis of *Alleyne*, this issue is unpreserved and appellate review is limited to plain error affecting substantial rights.  *People v Lockridge*, ___ Mich ___, ___; ___ NW2d ___ (2015) (Docket No. 149073); slip op at 30.

In *Alleyne*, 133 S Ct at 2159, 2163, the United States Supreme Court held that because "mandatory minimum sentences increase the penalty for a crime," any fact that increases the mandatory minimum is an "element" that must "be submitted to the jury and found beyond a reasonable doubt."  In *Lockridge*, ___ Mich at ___; slip op at 1-2, our Supreme Court held that Michigan's sentencing guidelines are constitutionally deficient under *Alleyne* to the extent that

-13-

"the guidelines *require* judicial fact-findings beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e. the 'mandatory minimum' sentence under *Alleyne*." To remedy the constitutional violation, the Court severed MCL 769.34(2) to the extent that it makes the sentencing guidelines, as scored based on facts beyond those admitted by the defendant or found by the jury, mandatory. *Id.* at ___; slip op at 3. The Court explained that a sentencing court must still score the guidelines to determine the applicable guidelines range, but a guidelines range calculated in violation *Alleyne* is now advisory only. *Id.* at ___; slip op at 3.

Defendant received a total of 181 OV points, placing him in OV Level VI (100+ points) on the applicable sentencing grid. MCL 777.62. This guidelines range was based on the scoring of OVs 1, 2, 3, 4, 5, 6, 7, and 12. Defendant asserts that OV 4 (psychological injury to victim), MCL 777.34, OV 5 (psychological injury to member of victim's family), MCL 777.35, and OV 7 (aggravated physical abuse), MCL 777.37, were scored based on impermissible judicial fact-finding. We agree. However, defendant is not entitled to resentencing because OVs 1, 2, 3, and 6 were based on facts admitted by defendant or found by the jury verdict, and were sufficient to sustain the minimum number of OV points necessary for defendant's score to fall in the cell of the sentencing grid under which he was sentenced. See *Lockridge*, ___ Mich at ___; slip op at 32. Thus, no plain error occurred.

E. JUDICIAL BIAS

Defendant next argues that he was denied a fair trial based on judicial bias. Specifically, defendant asserts that the trial court aggressively questioned Davies in order to intimidate her and exhibited bias during sentencing. We disagree.

"The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; ___ NW2d ___ (2015). However, because defendant did not object to the challenged behavior in the trial court, this issue is unpreserved. *People v Sardy*, 216 Mich App 111, 117-118; 549 NW2d 23 (1996). Unpreserved issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). In *Stevens*, 498 Mich at 170-171, our Supreme Court explained:

> A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. [Citations omitted.]

A fact-specific inquiry is required. *Id*. at 171. "A single inappropriate act does not necessarily give the appearance of advocacy or partiality, but a single instance of misconduct may be so egregious that it pierces the veil of impartiality." *Id*.

> In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors, including the nature of the judicial conduct, the tone and

demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. This list of factors is not intended to be exhaustive. [*Id.* at 172 (citations omitted).]

Defendant asserts that the trial court exhibited misconduct while questioning Davies. After taking the stand, Davies began crying, and the trial court sent the jury to lunch. The trial court then addressed Davies, stating, "I don't know why you're crying or what you're afraid of, but you'd better get afraid of me because I'm not going to spend a lot of time begging you to answer questions, because I can send you to jail, and I will do so." Later, Davies testified that she had been warned not to testify. Defendant challenges the court's comments, arguing that the court was unfairly harsh toward Davies, who was simply emotional remembering the traumatic event of the shooting. Defendant does not, however, show how the trial court's statements impacted his trial or exhibited judicial bias toward defendant. Indeed, Davies was a witness for the prosecution. Furthermore, the court's comments were made outside the presence of the jury and, thus, there was no reasonably likelihood that the comments improperly influenced the jury. Accordingly, we do not agree that the trial court's statements to Davies denied defendant a fair trial.

Defendant also argues that the trial court exhibited bias at sentencing when the trial court "testified for the victim's mother[.]" At sentencing, in regard to the victim's mother, the trial court stated:

> But you're going to tell me that this lady walks in there every single day, she looks at the son that she brought into this world that she believed was going to as least go to college and be something in this society, and he's a vegetable; and you don't think she doesn't need professional [help]. I disagree with you.

Here, again, defendant fails to show how the trial court's statement at sentencing denied him a fair trial or influenced the jury. Defendant also summarily claims that the Detroit Police Department conducted unfair line up procedures during its investigation, but cites no support, legal or factual, for his contention. *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008) (a party must support his position with references to the record); *Payne*, 285 Mich App at 195 (appellant may not merely announce his position and leave it to this Court to discover and rationalize his claims). Accordingly, defendant's claim lacks merit.

Finally, we note that, to the extent that any of defendant's allegations raised on appeal were not specifically addressed by this Court, all arguments were reviewed and found to lack merit.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly

-15-