PEOPLE v WOLVERTON

Docket No. 196674. Submitted September 3, 1997, at Lansing. Decided
December 19, 1997, at 9:00 A.M.

Mark Wolverton was convicted by a jury in the Livingston Circuit
Court, Daniel A. Burress, J., of operating a motor vehicle while
under the influence of intoxicating liquor, third offense, and of
driving with a suspended license. The defendant appealed, claiming
that the trial court should have granted his motion for a mistrial
inasmuch as he was denied a fair and impartial trial because the
prosecution remarked during opening statement that the defend-
ant's Breathalyzer test had indicated a blood alcohol level at twice
the legal limit, but failed to introduce the Breathalyzer test results
into evidence for lack of a proper foundation.

The Court of Appeals *held*:

When a prosecutor fails to prove allegations made during opening
statement to a jury, reversal is not required in the absence of bad
faith or prejudice to the defendant. In this case, the prosecution's
unproven allegation of the results of defendant's Breathalyzer test
resulted in prejudice to the defendant, thus requiring a reversal of
the OUIL, third offense, conviction.

OUIL conviction reversed; driving with suspended license convic-
tion affirmed.

1. CRIMINAL LAW — MISTRIALS — APPEAL.

The grant or denial of a motion for a mistrial rests within the sound
discretion of the trial court; an abuse of that discretion will be
found where the trial court's denial of the motion has deprived the
defendant of a fair and impartial trial.

2. CRIMINAL LAW — TRIALS — PROSECUTORS' OPENING STATEMENTS — FAILURE
TO PROVE ALLEGATIONS.

Failure by a prosecutor to prove allegations made during opening
statement to a jury does not require a reversal of the conviction in
the absence of bad faith by the prosecutor or prejudice to the
defendant.

*Frank J. Kelley*, Attorney General, *Thomas L.
Casey*, Solicitor General, *David L. Morse*, Prosecuting

Attorney, and *Daniel J. Garber, Jr.*, Chief Assistant Prosecutor, for the people.

*Lawrence J. Emery*, for the defendant.

Before: M. J. KELLY, P.J., and REILLY and JANSEN, JJ.

PER CURIAM. Following a jury trial, defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor (OUIL), third offense, MCL 257.625(1)(a); MSA 9.2325(1)(a), and driving with a suspended license, MCL 257.904(1)(b); MSA 9.2604(1)(b). The trial court sentenced defendant, an habitual offender, to concurrent terms of 3 to 7-1/2 years in prison for the OUIL conviction and to ninety days for driving on a suspended license. Defendant appeals from his convictions as of right. We reverse in part and affirm in part.

Defendant was arrested in Livingston County for driving while intoxicated after a police officer, Deputy Carl Smyth, observed him driving erratically and acting intoxicated. At trial, Smyth testified that, on the day of defendant's arrest, defendant drove onto another person's property, got out of his car, stumbled into a barn, and pretended to be working there. Inside the barn, defendant emitted a strong odor of intoxicants, slurred his speech, and had trouble walking. When confronted by Smyth, defendant admitted that he had consumed at least a six pack of beer, but explained that he had not been driving. After defendant "failed" a field sobriety test,[1] he was arrested and

---

[1] When Smyth asked defendant to recite the alphabet, defendant forgot letters, mixed letters out of place, and there was "a lot of slurring." Defendant could not complete the alphabet in two tries. Smyth then asked defendant to stand still with his feet together, head back, and eyes closed. When defendant attempted to do so, he immediately began circling and

taken to the Livingston County jail. The booking officer at the jail testified that, thirty minutes after his arrest, defendant seemed agitated. However, defendant's booking sheet indicated that defendant did not appear to be under the influence of drugs or alcohol.

The issue of defendant's intoxication was disputed by several of defendant's co-workers and family members who testified that they were with defendant on the day of his arrest and that they had not seen him consume any alcohol or act intoxicated. Some of these witnesses also explained that defendant worked with a strong-smelling glue, which had been on his clothing on the day of his arrest. Defendant then testified that he had not been drinking on the day of his arrest. He explained that he ran into the barn and pretended to be working because he knew he had been driving on a suspended license. Finally, defendant claimed that Smyth had lied when Smyth testified that he had conducted field sobriety tests on defendant and that defendant had admitted drinking.

On appeal, defendant first argues that the trial court erred in denying his motion for a mistrial made after the trial court ruled that the results of a blood alcohol test performed on defendant were not admissible because of the lack of a proper foundation. Defendant's motion was based on the fact that the prosecutor had already disclosed the results of the blood alcohol test during his opening statement, when he made the following comments:

> Deputy Smyth will testify regarding the instrument [with] which he gave [the Breathalyzer] test. He'll testify that he's

---

weaving. Defendant was able to count on his fingers, but he had to stop and think after he reached finger number "four."

been to a training course and he's learned how to give the test. He'll testify that he's given it a number of times[;] he'll testify that the instrument was properly maintained, properly certified, and in working order when he gave the test; and he will testify that the blood alcohol level in [defendant's] breath at the time was a .20 and a .19.

Now, the judge will instruct you that the legal limit in Michigan is .10 grams or more per 210 liters of breath, and Deputy Smyth will tell you that the level based on his test was .20 and .19, twice the legal limit.

The grant or denial of a motion for a mistrial rests within the sound discretion of the trial court. An abuse of that discretion will be found only where the trial court's denial of the motion has deprived the defendant of a fair and impartial trial. *People v Manning*, 434 Mich 1, 7 (BOYLE, J.), 21 (BRICKLEY, J.); 450 NW2d 534 (1990); *People v McAlister*, 203 Mich App 495, 503; 513 NW2d 431 (1994). We agree with defendant's contention that he was denied a fair and impartial trial by the prosecutor's comments about the inadmissible blood alcohol tests.

On several occasions, this Court has held that when a prosecutor states that evidence will be submitted to the jury, and the evidence is not presented, reversal is not warranted if the prosecutor did so acting in good faith. See *People v Johnson*, 187 Mich App 621, 626; 468 NW2d 307 (1991); *People v Solak*, 146 Mich App 659, 676; 382 NW2d 495 (1985); *People v Pennington*, 113 Mich App 688, 694; 318 NW2d 542 (1982); *People v Hurd*, 102 Mich App 424, 427; 301 NW2d 881 (1980); *People v Joshua*, 32 Mich App 581, 586; 189 NW2d 105 (1971). In this case, nothing in the record indicates that the prosecutor was acting in anything but good faith when he disclosed the results of the blood alcohol tests to the jury. However, a panel of this Court

has stated the rule somewhat differently, holding that when a prosecutor fails to prove allegations made during his opening statement, reversal is not required in the absence of bad faith *or prejudice to the defendant.* See *People v Coward,* 32 Mich App 274, 276; 188 NW2d 182 (1971).

When the Michigan Supreme Court first addressed the issue, it reasoned that a prosecutor's unsupported allegation did not, in itself, warrant reversal where the prosecutor was acting in good faith, because "the jury must be presumed to have based their verdict upon the evidence, and not upon the statement of counsel." *People v Fowler,* 104 Mich 449, 452; 62 NW 572 (1895); see also *People v Ecarius,* 124 Mich 616, 621; 83 NW 628 (1900). Applying the same rule, the Court, in *People v Swift,* 172 Mich 473, 483; 138 NW 662 (1912), further reasoned that failure by the prosecutor to prove allegations made during opening statement is at least as prejudicial to the prosecution as to the defense, because it opens the door to "caustic argument" on the part of defense counsel. In the early cases, then, the Court apparently ignored the possibility that a defendant could be unfairly prejudiced by unproved allegations made in good faith. However, in three subsequent cases relying on the "good faith" rule, the Michigan Supreme Court explicitly noted that no prejudice had resulted from the various unproved prosecutorial allegations at issue. See *People v Thomas,* 333 Mich 496, 502; 53 NW2d 349 (1952); *People v Ryckman,* 307 Mich 631, 639-641; 12 NW2d 487 (1943); *People v Tenerowicz,* 266 Mich 276, 290; 253 NW 296 (1934). Then, in *People v Davis,* 343 Mich 348, 357; 72 NW2d 269 (1955), the Court explained:

> It is a rule that where in an opening statement the prose-
> cutor makes statements which may not be substantiated at
> trial by the evidence, we will not reverse for that fact alone
> in the absence of a showing of bad faith on the part of the
> prosecutor *or prejudice to the defendant.* [Emphasis
> added.]

Therefore, because the ultimate concern is whether the defendant received a fair and impartial trial, the Court of Appeals cases that have framed the issue solely in terms of the prosecutor's good faith are misleading.

The evidence in this case essentially presented a credibility contest between Smyth and defendant. Given this context, we believe that the prosecutor's damning, and subsequently unproved, allegation that defendant's blood alcohol content was twice the legal limit, was so prejudicial as to require the declaration of a mistrial in order to assure defendant a fair trial.

Shortly after the jury retired to deliberate, it sent a note requesting advice from the trial court with respect to whether the results of the blood alcohol tests were "in evidence" and, if so, whether it could have access to them. In response, the trial court informed the jury that the results were not in evidence and would not be given to the jury. The jury's specific request suggests that the jurors were aware of the importance of the results and supports our conclusion that defendant was prejudiced by the prosecutor's opening statement. Moreover, the trial court's response was not sufficient to cure the prejudice. While it is true that a jury is generally presumed to follow the instructions of the trial court until the contrary is clearly shown, *McAlister, supra* at 504, we do not believe that even the most consci-

entious jurors could avoid being affected by the excluded information or by the prosecutor's characterization of it.

When the prosecutor referred to the results of defendant's blood alcohol test, and his interpretation of those results, he must have been aware that he was required to provide a foundation for the admissibility of this evidence. He took a risk that his prediction of admissibility would not be vindicated. As a result of his gamble, the jury was exposed to the single most highly persuasive evidence that the prosecutor could have produced, but did not. Accordingly, despite the prosecutor's good faith, the trial court's instruction to the jury, and the compelling evidence of defendant's intoxication, we hold that defendant is entitled to a reversal of his conviction because he was unfairly prejudiced by the prosecution's unfortunate disclosure. *Davis, supra* at 357; *Coward, supra* at 276.

Defendant presents other arguments concerning his OUIL conviction. Because we reverse defendant's OUIL conviction on the foregoing basis, we need not address defendant's other claims of error. We do note, however, that if defendant is tried again on the instant OUIL charge, the prosecutor should avoid questioning witnesses on defendant's initial refusal to take a Breathalyzer test. Evidence of a refusal to submit to a Breathalyzer test is admissible only to show that such a test was actually offered to a defendant, see MCL 257.625a(10); MSA 9.2325(1)(10); *People v Duke*, 136 Mich App 798, 803-804; 357 NW2d 775 (1984), which was not an issue of relevance in the context of this case.

We reverse defendant's conviction of OUIL, third offense, and affirm his conviction of driving with a suspended license.