# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KEITH JAMES LINTZ,

        Defendant-Appellant.

UNPUBLISHED
March 17, 2015

No. 318778
Cass Circuit Court
LC No. 13-010009-FC

Before: M. J. KELLY, P.J., and MURPHY and HOEKSTRA, JJ.

PER CURIAM.

Defendant Keith James Lintz appeals by right his jury convictions of two counts of first-degree premeditated murder, MCL 750.316, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced Lintz to serve life in prison without the possibility of parole for the murder convictions and to two years in prison for the felony-firearm conviction. Because we conclude there were no errors warranting relief, we affirm.

Lintz' convictions arise from the murders of John and Carolyn Tarwacki in their home on February 5, 2010. A set of footprints was found in the snow coming from Yankee Road to the home's mudroom. Another set of footprints went from the mudroom to Yankee Road. No physical or forensic evidence tied Lintz to the murders, but several witnesses testified about incriminating statements that Lintz made. Patricia Wilds, who lived with Lintz' cousin, testified that Lintz appeared at his cousin's trailer a few days after the murders—he was "jittery and paranoid" at the time—and stated that police officers had his footprints and he should have wiped the prints. Shane Zimmerman, who was jailed with Lintz, testified that Lintz said he blacked out the morning of the Tarwacki murders after doing some drugs, that when he "came to" there was blood on him, that his brother told him how to remove the blood and powder residue, and that he and his brother went to a gas station to establish an alibi. Lintz also said he was sorry and they did not deserve to die.

Lintz first argues that the trial court erred when it allowed the prosecutor to remove Jason Downing as a witness. Lintz intertwines his argument with a claim that the trial court should have declared a mistrial when the prosecutor stated that he would not be calling Downing. Because this claim is unpreserved, we shall review it for plain error. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

-1-

In his opening statement, the prosecutor told the jury that numerous witnesses, including Downing, would testify about Lintz' admissions. Downing would testify that Lintz said he thought the Tarwacki home was a methamphetamine house, that he was startled by a man, and that he stabbed a woman. Lintz' lawyer moved to limit Downing's testimony and the trial court determined that the prosecutor could only elicit testimony from Downing about Lintz' admissions; he could not question Downing about an incident at the Hideaway Lounge, where Lintz pulled a gun on someone, or about Downing's conversation with Lintz concerning the gun or what Lintz did with the gun. The prosecutor then told the trial court that he no longer wished to call Downing. He explained that Downing always maintained that the conversation with Lintz centered on the gun and that, absent evidence about the gun, Downing's testimony would be difficult to follow. He also believed there would be a credibility issue that the jury would be unable to resolve without hearing about the entire conversation.

The prosecutor may add or delete witnesses by leave for good cause. MCL 767.40a(4). Given the limitations placed on Downing's testimony, the prosecutor had good cause for deleting him as a witness. See *People v Sholl*, 453 Mich 730, 741; 556 NW2d 851 (1996) (recognizing that prosecutors generally must be permitted to give the jury an intelligible presentation of the full context in which disputed events occurred). The prosecutor's belief that, absent any evidence about the gun, Downing's testimony would be confusing and would have credibility issues was reasonable and not "patently absurd," as claimed by Lintz. Furthermore, Lintz' lawyer never indicated that he wanted to elicit any testimony from Downing. Under these circumstances, there was no plain error. *Carines*, 460 Mich at 763.

Moreover, a prosecutor's misstatement in his or her opening statements will not warrant relief unless the misstatement prejudiced the defendant or was made in bad faith. *People v Wolverton*, 227 Mich App 72, 77; 574 NW2d 703 (1997). There is no evidence that the prosecutor summarized the intended testimony in bad faith.

The prosecutor's opening statements concerning Downing also did not prejudice Lintz. *Id.* In his opening statement, the prosecutor told the jury that Lintz made incriminating admissions to numerous witnesses. During trial, Wilds, Karessa Warner, Ryan Dilliard, Krista Mehl, James Fagley, and Zimmerman each testified about admissions that Lintz made. In addition, Timothy James testified that Lintz said he was not worried about the murder charges and that he was going to kill Warner and Zimmerman. Thus, the prosecutor's summary was accurate. Admittedly, Lintz made admissions to Downing that he made to no other witness. No trial witness testified that Lintz said he went to the Tarwacki home because he thought it was a methamphetamine house. However, other admissions that Lintz made to Downing were made to trial witnesses. Dilliard testified that Lintz said he was caught by someone in the house, and Mehl and Dilliard testified that Lintz said he killed two people. Because the prosecutor presented evidence of admissions regarding the Tarwacki murders that Lintz made to several witnesses, the prosecutor's failure to substantiate his summary of Downing's testimony did not prejudice Lintz. Moreover, had Downing testified, even as limited, his testimony would have supported the prosecutor's case. Accordingly, even if it were error to allow Downing's removal, the error would not warrant relief. *Carines*, 460 Mich at 763. Finally, the trial court instructed the jury that the lawyers' opening statements and closing arguments were not evidence and that its verdict had to be based on the evidence. A jury is presumed to follow its instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Consequently, the trial court did not err

-2-

by failing to sua sponte order a mistrial. See *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010) (stating that a trial court should only grant a mistrial for an irregularity that prejudiced the defendant's right to a fair trial).

Lintz also argues that his lawyer's handling of the prosecutor's decision to strike Downing as a witness amounted to ineffective assistance. In order to establish ineffective assistance of counsel warranting relief, Lintz must show that his trial lawyer's handling of this issue fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that the outcome would have been different, but for his lawyer's unprofessional conduct. *People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012), vacated not in relevant part 493 Mich 864.

Lintz has failed to establish that his lawyer's decision to allow the prosecutor to strike Downing as a witness without objection or a motion for a mistrial fell below an objective standard of reasonableness under prevailing professional norms. This Court must conclude that the trial lawyer's decision fell within the wide range of professional conduct if there might have been a legitimate strategic reason for the decision. *Id.* at 22-23. Given how damaging Downing's testimony might have been, Lintz' trial lawyer could reasonably conclude that it was best to allow the prosecutor to strike the witness without interference. He might also have believed that an additional instruction that the jury must ignore the prosecutor's opening statement would actually cause the jury to think about the opening statement, thereby reminding the jury of the statements. Accordingly, Lintz has not overcome the presumption that his lawyer's acts or omissions were a matter of sound trial strategy. *Id.* Similarly, for the reasons already explained, any error did not prejudice Lintz.

There were no errors with regard to the striking of Downing as a witness that warrant relief.

Lintz further argues that his trial lawyer's decision not to ask Zimmerman about the alleged prior inconsistent statements he made to Sean Carmody amounted to ineffective assistance. Assuming without deciding that Lintz' lawyer's performance fell below objective standards of reasonableness, Lintz cannot show that there is a reasonable probability that the result of his trial would have been different. *Id.* at 22. Lintz has the burden to demonstrate the factual predicate for his claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Lintz claims that Carmody would have testified that Zimmerman made prior statements that were inconsistent with his testimony. But it is not apparent from the record how Carmody would have testified. Lintz' lawyer admitted that he did not know exactly how Carmody would testify and stated there was a possibility that he would decide not to call him. Because it is unknown whether Carmody would have testified that Zimmerman made prior statements that were inconsistent with his testimony, Lintz has failed to establish that, but for counsel's deficient performance, a different result was reasonably probable. *Gioglio*, 296 Mich App at 22.

Further, Zimmerman was not the only witness who testified about admissions that Lintz made. Several witnesses testified about Lintz' incriminating statements. In addition to Wilds, Warner, who moved in with Lintz in February 2010, testified that when she asked Lintz about her mother's statement that he was the number one suspect in a double homicide, Lintz

-3-

responded that the only reason he was a suspect was because officers had his footprints going through the yard. Dilliard testified that Lintz said he could not go back to Michigan because he "did it." Dilliard also testified that he said in a subsequent conversation that he murdered two people. Mehl testified that Lintz said he killed two people in Michigan and that she should not worry because the officers only had his footprints and would never find him. Fagley testified that during a conversation about the Tarwacki murders, Lintz said he snapped and that he took them out of their misery. Given this testimony, even if Lintz' lawyer had more effectively impeached Zimmerman, there is no reasonable probability that it would have caused the jury to disregard the testimony of the other witnesses. Lintz has not established that his lawyer's failure to more effectively impeach Zimmerman warrants relief. *Id.*

Lintz next argues that his lawyer was ineffective for failing to object to the trial court's instruction to the jury after it requested transcripts. After the jury requested transcripts, the trial court told the jury that "the transcript preparation procedure is a rather lengthy one" and that the transcripts were "not available at this time and would not be available for a considerable period of time." It instructed the jury to return to the jury room and to rely on its collective memory of the testimony. If a jury requests a review of certain testimony, a trial court may order the jury to deliberate further without the requested review, as long as it does not foreclose the possibility of having the testimony reviewed at a later time. MCR 2.513(P). Here, it is not clear that the trial court actually foreclosed the possibility of future review. Nevertheless, assuming that the trial court's response to the request violated MCR 2.513(P), Lintz has not established that the failure to object fell below an objective standard of reasonableness. *Gioglio*, 296 Mich App at 22. Each of the admission witnesses testified to statements by Lintz that implicated him in the Tarwacki murders. Lintz' lawyer may have reasonably believed it was best not to object to the trial court's response, thereby preventing the jury from being reexposed to the damaging testimony of the admission witnesses. Accordingly, Lintz has failed to overcome the presumption that his lawyer's decision was a matter of sound trial strategy. *Id.* at 22-23.[1]

Lintz argues that the trial court erred when it admitted Wilds's testimony that she was "jumped" by eight women the day after she testified at Lintz' preliminary examination. Because this claim of error is unpreserved, we must review it for plain error. *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011).

A defendant's threat against a witness is generally admissible as conduct that can demonstrate a consciousness of guilt. *Sholl*, 453 Mich at 740. There must, however, be some evidence that ties the threat to the defendant. See *People v Long*, 144 Mich 585, 585-586; 108 NW 91 (1906). There was no evidence in this case that tied the assault on Wilds to Lintz. Nevertheless, it is evident from the context that the prosecutor elicited the testimony not to demonstrate a consciousness of guilt, but to show that Wilds was credible. "If a witness is

---

[1] Although our Supreme Court has acknowledged that it is impossible to know the impact of a trial court's decision to foreclose review of testimony, see *People v Smith*, 396 Mich 109, 111; 240 NW2d 202 (1976), we cannot presume prejudice under the facts of this case. See *People v Vaughn*, 491 Mich 642, 671-674; 821 NW2d 288 (2012).

offering relevant testimony, whether that witness is truthfully and accurately testifying is itself relevant[.]" *People v Mills*, 450 Mich 61, 72; 537 NW2d 909 (1995). Wilds offered relevant testimony. Thus, whether Wilds was testifying truthfully and accurately was relevant. One could reasonably assume that, because the assault occurred the day after she testified at Lintz' preliminary examination and because she was called a "snitch" by the eight women, Wilds was assaulted because she testified against Lintz. Wilds' testimony about the assault made it more probable that Wilds was a credible witness because it indicated that Wilds had an interest in *not* testifying. Because evidence of the assault was relevant to the question whether Wilds was truthfully and accurately testifying at trial, the testimony did not amount to plain error. *Benton*, 294 Mich App at 202. Similarly, because her testimony was relevant and admissible, Lintz' lawyer cannot be faulted for failing to object to it. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

There were no errors warranting relief.

Affirmed.


/s/ Michael J. Kelly
/s/ William B. Murphy
/s/ Joel P. Hoekstra