*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAJUAN DION-DIEGO DAVENPORT,

        Defendant-Appellant.

UNPUBLISHED
October 09, 2024
10:04 AM

No. 366971
Macomb Circuit Court
LC No. 2021-001395-FC

Before: CAMERON, P.J., and K. F. KELLY and GARRETT, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of (a) two counts of first-degree murder, MCL 750.316(a), and (b) two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to life without the possibility of parole for each first-degree murder conviction, and 24 months' imprisonment for each felony-firearm conviction. We affirm in all respects, but remand to the trial court solely for the ministerial task of correcting the typographical error in the judgment of sentence.

## I. BACKGROUND

This matter involves the murder of Dazhane Holloway and Dionna Davis at the Wellington Crescent apartment complex in Clinton Township, Michigan. On the evening of January 22, 2021, witnesses heard multiple gun shots coming from the apartment complex's parking lot. Holloway and Davis lay dead. Defendant and his codefendant, Darrel Banks, ran into a stolen Dodge Charger and sped away, leading officers on a high-speed chase on the freeway. The Charger eventually crashed into a utility pole. Defendant and Banks were arrested and taken to the hospital for treatment. Police collected and photographed their belongings. Defendant was charged, tried, convicted, and sentenced. This appeal followed.

## II. PROSECUTORIAL ERROR[1]

### A. PRESERVATION AND STANDARD OF REVIEW

Defendant first claims that the prosecutor committed multiple instances of error. "In cases alleging prosecutorial [error], issues are preserved by contemporaneous objections and requests for curative instructions[.]" *People v Evans*, 335 Mich App 76, 88; 966 NW2d 402 (2020) (quotation marks and citation omitted). Because defendant did not contemporaneously object or request a curative instruction to his claims of error, this issue is unpreserved.

When preserved, "[i]ssues of prosecutorial [error] are reviewed de novo to determine whether the defendant was denied a fair and impartial trial." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "Unpreserved issues are reviewed for plain error affecting substantial rights." *Id.* "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* at 763-764 (quotation marks and citation omitted; alteration in original).

Defendant also challenges the prosecutor's presentation of a photograph of the key to the stolen Charger. "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). This issue is unpreserved because defendant did not object when the photograph was admitted. Unpreserved evidentiary issues are also reviewed for "plain error that affected substantial rights." *Id.*

### B. UNDERLYING LAW

A criminal defendant has a right to a fair and impartial trial. US Const, Am VI; Const 1963, art 1, § 20. "Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial [error] is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "A prosecutor has committed [error] if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014). "A prosecutor can deny a defendant his or her right to a fair trial by making

---

[1] "As this Court recently noted . . . although the term 'prosecutorial misconduct' has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015) (quotation marks and citation omitted). Because this case does not involve the extreme allegation of prosecutorial "misconduct," we refer to defendant's allegations as prosecutorial "error."

improper remarks that so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. (quotation marks and citation omitted, alteration in *Lane*). "Generally, [p]rosecutors are accorded great latitude regarding their arguments and conduct." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (quotation marks and citation omitted; alteration in *Bahoda*). They are "free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). Additionally, they "need not confine argument to the blandest possible terms." *Dobek*, 274 Mich App at 66. However, a prosecutor is not permitted to argue facts unsupported by the evidence. *People v Stanaway*, 446 Mich 643, 686; 521 NW2d 557 (1994).

This Court "evaluate[s] instances of prosecutorial [error] on a case-by-case basis, reviewing the prosecutor's comments in context and in light of the defendant's arguments." *Lane*, 308 Mich App at 62-63. "A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Dobek*, 274 Mich App at 64. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *Unger*, 278 Mich App at 235 (citations omitted).

## C. OPENING STATEMENTS

Defendant first argues the prosecutor erred when he referred to the murders as a "hit" during his opening statement. We disagree.

"The purpose of an opening statement is to tell the jury what the advocate proposes to show." *People v Moss*, 70 Mich App 18, 32; 245 NW2d 389 (1976). In this case, the prosecutor stated: "This is the part of the trial, it's essentially argument. It's our theory of the case. What we believe the evidence will show." He continued:

I believe the evidence will show that back on January 22, 2023 [sic] Dazhane Holloway is returning her vehicle . . . and got back from getting groceries.

We believe the evidence will show she backs her car into a parking spot and Dionna Davis exits the residence to aid in getting the groceries out of the vehicle.

What happens next is an ambush. Simply put, a hit. Results [sic] in Dazhane Holloway, and Dionna Davis losing their lives.

Defendant argues the "prosecution did not show or prove that defendant was a hitman, yet he alleged what happened was a 'hit,' the implication being that this was a premeditated murder, committed by someone who has [sic] contracted to do the killing." Defendant contends that, because "premeditation was an element of the crime charged, being first-degree premediated murder, [he] was at an unfair disadvantage from the start because the jury was being advised from the start that the killing was premeditated." While prosecutors are not permitted to argue facts unsupported by evidence, *Stanaway*, 446 Mich at 686, they are "free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich App at 236. The prosecutor in this case prefaced his statements, emphasizing he was presenting the prosecution's theory of the case.

Our caselaw describes the bounds of a prosecutor's statements. For example, in *People v Johnson*, 187 Mich App 621, 625-626; 468 NW2d 307 (1991), the defendant argued the "prosecutor's assertions in the opening statement that defendant was a drug dealer and that defendant's motive for the shooting was to eliminate the competition were not supported by the evidence." This Court determined that "[t]here was no direct evidence that defendant was involved in the drug business[,]" *id*. at 626, but, in reviewing the record, found "no evidence of bad faith on the part of the prosecutor and conclude[d] that the prosecutor's opening remarks did not deny [the] defendant a fair trial." *Id*.

By contrast, in *People v Wolverton*, 227 Mich App 72, 76; 574 NW2d 703 (1997), this Court summarized the general rule "that when a prosecutor fails to prove allegations made during his opening statement, reversal is not required in the absence of bad faith *or prejudice to the defendant*." We determined "the prosecutor's damning, and subsequently unproved, allegation that defendant's blood alcohol content was twice the legal limit, was so prejudicial [it] require[d] the declaration of a mistrial in order to assure defendant a fair trial." *Id*. at 77. This Court noted: "[T]he jury was exposed to the single most highly persuasive evidence that the prosecutor could have produced, but did not." *Id*. at 78. This Court held the defendant was "entitled to a reversal of his conviction because he was unfairly prejudiced by the prosecution's unfortunate disclosure." *Id*.

The facts in this case are more analogous to *Johnson* than *Wolverton*. The prosecutor characterized the murders as a "hit." Even if we were to conclude that there was no evidence of a "hit," the evidence overwhelmingly supported defendant's convictions. A review of the record finds "no evidence of bad faith on the part of the prosecutor . . . ." *Johnson*, 187 Mich App at 626.

Further, defendant was charged with first-degree murder. "[T]he elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (quotation marks and citation omitted). "[T]o premeditate is to think about beforehand[.]" *Id*. (quotation marks and citation omitted). Indeed: "Premeditation and deliberation may be established by an interval of time between the initial homicidal thought and ultimate action, which would allow a reasonable person time to subject the nature of his or her action to a 'second look.' " *Id*. at 242 (citation omitted). As a result, the prosecution's characterization of the murders as a "hit" could reasonably be viewed as its way of showing premeditation, since this element is a "subjective factor[] [which is] usually incapable of direct proof absent an admission or confession by the defendant." *Id*. at 241.

The trial court also instructed the jury that the "lawyers [sic] statement [sic] and argument [sic] are not evidence.""You should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge." "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *Unger*, 278 Mich App at 235 (citations omitted). Because the prosecutor did not act in bad faith when he used the word "hit" in his opening statement, *Johnson*, 187 Mich App at 626, there was no plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763. Even if the word was somehow prejudicial, this prejudice was cured by the trial court's instructions.

-4-

## D. DEFENDANT'S CROSS-EXAMINATION

Next, defendant argues the prosecutor erred when he improperly implied that the key to the stolen Charger was among defendant's personal belongings when he was arrested. We disagree.

Defendant testified that he walked to the apartment complex, heard gunshots, and Banks reported being shot. Defendant stated: "As I was running to [] Banks I see two other individuals also running from the dark colored car. The car is also running, it's on. The doors are open." Defendant noted he and Banks got into the Charger and drove off. On cross-examination, the prosecution questioned defendant about why the key to the Charger was among his personal belongings after his arrest:

> *Q*. I see two sets of keys there?
>
> *A*. Yes.
>
> *Q*. Which set of keys is for your car? Actually I see there is a big set of keys and another little key. Which key is for your car?
>
> *A*. This is my car and this is another car.
>
> *Q*. What is that other key set that is up there?
>
> *A*. I don't know what that is.
>
> *Q*. How did that get in your pocket?
>
> *A*. I don't recall that key being up there.
>
> *Q*. You don't remember it being in your pocket at all?
>
> *A*. Yes, sir.
>
> *Q*. The officer [sic] that testified including Jay Anderson and Officer [Steven] Vasilides, who indicated that that was your personal property taken, that wasn't in there when you, it was turned over to them. That was added later?
>
> *A*. I don't know what was in my pocket. I don't recall this key.
>
> * * *
>
> *Q*. So you don't remember that specific key being in your pocket.
>
> *A*. No sir.
>
> *Q*. All right. If I told you that that was the key to start that Dodge Charger, would you agree with me?
>
> *A*. I would have no way of knowing that, sir.

Defendant suggested he coincidentally arrived at the scene of the murders, heard gunshots, and saw the Charger running. Thus, defendant's testimony "opened the door to cross-examination[.]" *People v Lukity*, 460 Mich 484, 498; 596 NW2d 607 (1999). Specifically, the prosecutor questioned defendant's version by asking him about the keys to the stolen Charger being among his personal belongings after his arrest. The prosecutor used inconsistency during closing argument:

> Let's go to his personal belongings and I thought this was interesting as well. We have his car keys, which he indicated these are his car keys. He couldn't explain how these car keys got into his pocket. He knew about these ones, no idea where these came from. Just so happens he indicated he owns a [Chrysler] 300M or a different kind of car. We have two car keys, and what the Detective Anderson indicated was not his vehicle. As well as that loaded magazine that matches his weapon. Where did they come from? Is it that you had them on you already? I can't explain where they are at. I don't know. I have no idea. They are in your pocket, in your personal belongings that were taken from you at the hospital.

The prosecution's reliance on this evidence was apparently in good faith, particularly considering that defendant had opened the door to the issue. See *Dobek*, 274 Mich App at 75. Defendant admitted he drove the Charger and was seen exiting the driver's side after the crash. As a result, the prosecutor did not err when he questioned defendant about the keys to the Charger.

Defendant's argument that the prosecutor failed to establish the necessary chain of evidence in connection with the stolen Charger key is without merit. Detective Jay Anderson testified:

> Their property was then seized. The [sic] Officer Phillips collected bags with both defendants [sic] property in it, turned them over to evidence tech [Steven] Vasilides who then photographed the items for reasons that we can look at them here today and then put them into evidence at the Clinton Township police department.

Vasilides photographed defendant's personal property, which included keys. The prosecutor asked if defendant's personal property "was physically on him[,]" to which Vasilides replied: "It was given to me from one of the other officers. I believe it was property taken from him at the hospital." Further, defendant admitted all of the other items shown in the photograph belonged to him:

> *Q*. Are these the items that were in your possession back on that date, your personal property, I guess.

> *A*. This is my wallet, my car keys and my car, the magazine they found and personal receipt.

The record does not support defendant's suggestion that the keys to the stolen Charger somehow appeared among his personal belongings after his arrest. Although Officer Philips did not testify about collecting defendant's belongings at the hospital, "the admission of real evidence does not require a perfect chain of custody." *People v White*, 208 Mich App 126, 130; 527 NW2d

34 (1994). "[S]uch evidence may be admitted where the absence of a mistaken exchange, contamination, or tampering has been established to a reasonable degree of probability or certainty." *Id*. at 133. Detective Anderson's testimony established the items were collected at the hospital and turned over to Vasilides to photograph. "The threshold question remains whether an adequate foundation for admission of the evidence has been laid under all the facts and circumstances of each individual case." *Id*. In this case, an adequate foundation was laid. As a result, the prosecutor did not err when he questioned defendant about the Charger key, and there was no plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

### III. PHOTOGRAPH OF DEFENDANT HOLDING A GUN

Defendant argues the trial court erred when it admitted a photograph of him holding a gun found on Davis's phone. We disagree.

### A. STANDARD OF REVIEW

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008). "Preliminary questions of law, including whether a rule of evidence precludes the admission of evidence, are reviewed de novo." *Burns*, 494 Mich at 110. "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *Id*. (quotation marks and citation omitted).

### B. ANALYSIS

Generally, relevant evidence is admissible, while irrelevant evidence is inadmissible. MRE 402.[2] Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence[.]" MRE 401. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." MRE 403. Importantly, "MRE 403 does not prohibit prejudicial evidence; only evidence that is unfairly so." *People v Mardlin*, 487 Mich 609, 627; 790 NW2d 607 (2010) (quotation marks and citation omitted) "Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). Our Supreme Court has held:

> Assessing probative value against prejudicial effect requires a balancing of several
> factors, including the time required to present the evidence and the possibility of

---

[2] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time of defendant's trial.

delay, whether the evidence is needlessly cumulative, how directly the evidence tends to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects. [*Id*.]

Trooper Joseph Osborn recovered "a 45 caliber tan and black pistol[]" from the crashed Charger. Deputy Darrell Stemaj saw a "pistol on the driver's floor board." He added: "I just remember[ed] it was a small semi automatic [sic], possibly a 9 millimeter or 40 caliber. Green in color." Deputy Stemaj observed one of the guns had "the olive drab style or colored handle and black slide." Forensic scientist Brian Grabowski concluded most of the bullets were fired from the guns recovered from the crash scene, suggesting that the guns found in the crashed Charger were used in the murders. Detective Anderson described the photograph, noting:

This photograph that I pulled from I-Cloud [sic] which I observed to be [defendant] holding a hand gun. Looking at the hand gun in his hand and it's obvious that there is OD green on the hand gun similar to the one wed [sic] seize [sic] as evidence in the case.

Explaining what he meant by "OD" green, Detective Anderson stated:

Well, I had to look it up. It stands for olive Drab [sic]. I believe that is a color of a hand gun. As you can see, at the bottom of the handle here and up here, you can see it appears to be the same OD green as the handgun that was seized as evidence.

The prosecution argued the photograph was relevant because it showed defendant holding a similar gun used in the murders. Defendant argued the color scheme on the gun was common.

The trial court reasoned:

That is the exact same gun. Of course, we can't see a serial number but below the right hand small finger you can see that the bottom color of the gun and right above the index finger you can see the bottom color of the gun. Then you can see the top of the gun is black.

The trial court found the photograph admissible, holding:

Here the photographs establishes [sic] the Defendant's possession of a hand gun similar to the one used in the crime, and made it more probable that he was the shooter. This is especially true considering the fact that the Defendant [was] identified as the shooter was at issue in this case.

Thus the photographs have a tendency to make the existence of any fact that is of consequence to the determination of the actions more probable or less probable.

Additionally the testimony presented clearly reflected that the guns in the photograph were not necessarily those found at the scene and that is precisely what defense counsel argued to the jury.

\* \* \*

But I'm confident that I should deny the motion of the defense regarding exclusion of the photograph of [defendant] with the weapon similar to the one that is found at the scene. That is my ruling

"Photographic evidence is generally admissible as long as it is relevant, MRE 401, and not unduly prejudicial, MRE 403." *People v Brown*, 326 Mich App 185, 192; 926 NW2d 879 (2018) (quotation marks and citation omitted).

> Generally, photographs that are merely calculated to arouse the sympathies or prejudices of the jury should not be admitted. However, if a photograph is otherwise admissible for a proper purpose, it is not rendered inadmissible merely because it brings vividly to the jurors the details of a gruesome or shocking accident or crime. [*Id*. at 193 (quotation marks and citation omitted).]

But, "[e]vidence of a defendant's possession of a weapon of the kind used in the offense with which he is charged is routinely determined by courts to be direct, relevant evidence of his commission of that offense." *People v Hall*, 433 Mich 573, 580-581; 447 NW2d 580 (1989). "[T]o be admissible the gun seized from a defendant need only be shown to have been in the defendant's possession and of the same kind as that used during the charged offense." *Id*. at 582 n 7. "The fact that defendant had access to a . . . [gun] which at a minimum was similar to the one used in the commission of the crime is adequate at least to establish relevancy." *People v Howard*, 391 Mich 597, 604; 218 NW2d 20 (1974). Further:

> [A] weapon or instrument found in the possession of accused or of his criminal associates which, although not identified as the one actually used, is similar in form and character thereto, or which, from the circumstances of the finding justifies an inference of the likelihood or possibility of its having been used, is admissible for the purpose of showing availability to accused of the means of committing the crime in the manner in which it is shown to have occurred, or for the purpose of illustration, or of showing preparation, or the state of mind or intent of accused. [*People v Kramer*, 103 Mich App 747, 758-759; 303 NW2d 880 (1981) (quotation marks and citation omitted).]

Here, the probative value of the gun in the photograph was established because of its similarity to the one discovered in the crashed Charger. The gun's unique color scheme justified "an inference of the likelihood or possibility of its having been used," *id*., in the murders. This inference is further supported by the fact that the photograph of defendant holding the gun was

sent to Davis's cell phone days before her murder. Although the photograph was prejudicial, but "any prejudicial effect [was] outweighed by the clear probative value of the evidence." *Hall*, 433 Mich at 584.

## IV. NARRATION OF SURVEILLANCE VIDEO

Finally, defendant argues on appeal that the trial court erred when it allowed Detective Anderson to narrate a surveillance video and identify "a Charger" at the scene where the murder took place. We disagree.

## A. STANDARD OF REVIEW

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *Thorpe*, 504 Mich at 252. At trial, defendant objected to Detective Anderson's narration: "Then you see a trunk open. Subject at the rear of the car and the trunk is open now." On appeal, defendant takes issue with a different aspect of Detective Anderson's narration—specifically that he identified the make of the car in the parking lot as a Charger. Because defendant does not "specify the same ground for objection that [he] asserts on appeal[,]" *id.*, this issue is unpreserved. Unpreserved evidentiary issues are reviewed for "plain error that affected substantial rights." *Id*.

## B. ANALYSIS

"Generally, all relevant evidence is admissible except as otherwise provided by either the state or the federal constitution or by court rule." *People v Fomby*, 300 Mich App 46, 48; 831 NW2d 887 (2013); see also MRE 402. MRE 701 permits a lay witness provide opinion testimony if the opinion is "(a) rationally based on the witness's perception; and (b) helpful to clarify understanding the witness's testimony or to determining a fact in issue." A witness "cannot express an opinion on the defendant's guilt or innocence of the charged offense[.]" *Fomby*, 300 Mich App at 53. But, a lay witness's narration "could help the jury discern correctly and efficiently the events depicted in the videotape." *Id*. at 52 (quotation marks and citation omitted).

In this case, Detective Anderson stated:

> Well to begin with, in my briefing with the detectives, arrests had been made, an accident happened. The vehicle involved was a black Charger. So I knew that I was going to be possibly looking for a black Charger at the crime scene.
>
> So any vehicle that I saw, I was looking to try and identify those vehicles and trying to determine if that was a black Charger.

A black-colored vehicle then appeared on the video. Detective Anderson noted:

> This vehicle caught my attention as pulling in, prior to the 911 calls. We knew that this was at 6:00 p.m. as this vehicle pulled in. What I saw here is this vehicle pulling in, and essentially it turns around.

What is important in this view right here is you will see the front wheel looks like it's chrome, the back wheel is dark. So I was looking at this vehicle saying those two wheels are not matching.

Detective Anderson continued:

I'm familiar with Chargers or regular police vehicles. We don't have them. We are familiar with them. The rear brake light, I think one of the troopers call it a race track. I never heard that, but it's obvious in the shape of a tail light there. But I would recognize that would be a Charger.

Detective Anderson added:

We are looking in the upper left-hand corner of the vehicle. The vehicle that arrives from the north driving south and it will turn around and back into a parking spot in front of the apartment complex. There was the headlights. And now it is backing into the apartment spot.

\* \* \*

So, as the video plays out you will see a subject then fall down, and it is in the area where I was aware of where Ms. Davis was located and deceased. You see a subject walking out of the building now on foot.

\* \* \*

Then you see a trunk open. Subject at the rear of the car and the trunk open now.

Detective Anderson's testimony was rationally based on his familiarity with the surveillance video because he stated he viewed the extended version of the videos. Further, it appears the video was not clear, making Detective Anderson's narration helpful in providing the jury a clearer understanding about what it was viewing. *Fomby*, 300 Mich App at 51-52. Importantly, Detective Anderson did not identify defendant or Banks as the suspects in the video. *Id.*; cf. *People v Perkins*, 314 Mich App 140, 160; 885 NW2d 900, superseded in part on other grounds by *People v Hyatt*, 316 Mich App 368; 891 NW2d 549 (2016). He opined the vehicle was a Charger, and identified a person depicted as a "subject." As a result, Detective Anderson's narration did not invade the province of the jury because the jury was able to reach its own conclusions about whether defendant was the subject seen in the video and whether the car was a Charger. Stated differently, because Detective Anderson's testimony "was (1) rationally based his own perception of the video and (2) helpful for the jury to determine" whether the vehicle depicted was a Charger, "[the] testimony was admissible under MRE 701." *Fomby*, 300 Mich App at 53.

Moreover, evidence of defendant's guilt was overwhelming. *Perkins*, 314 Mich App at 162. There is no question defendant was driving the Charger when it crashed. A number of witnesses testified about the vehicle being a Charger, and defendant admitted he knew the vehicle at the scene "was a Charger." Detective Anderson's narration did not result in plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

Finally, we note that the judgment of sentence incorrectly identifies defendant's sentences for his felony-firearm convictions as 24 years' imprisonment. The trial court sentenced defendant for 24 *months'* imprisonment for these convictions. This distinction requires correction.

For the reasons discussed above, we affirm, but remand to the trial court solely for the ministerial task of correcting the typographical error in the judgment of sentence. MCR 6.435(A); MCR 7.216(A)(7). We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Kirsten Frank Kelly
/s/ Kristina Robinson Garrett