*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DION MAXWELL HINTON,

        Defendant-Appellant.

UNPUBLISHED
May 13, 2026
8:45 AM

No. 370257
Kent Circuit Court
LC No. 22-010307-FH

Before: MURRAY, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of delivery of a controlled substance, MCL 333.7401(2)(a)(*iv*); and conspiracy to deliver a controlled substance, MCL 750.157a(a), for which he was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve 2 to 20 years' imprisonment for each conviction. We affirm.

## I. FACTS AND PROCEEDINGS

This case arises out of a drug sale made during an undercover operation by the Grand Rapids Police Department (GRPD). On July 12, 2022, GRPD Lieutenant Jonathan Wu, Detective Robert Wiersema, and Officers Levi Guppy and Tyler Smith were working together on a delayed case operation to target drug dealers near Division Avenue in downtown Grand Rapids. Detective Wiersema was working undercover, posing as a homeless drug user. When he was near Division Avenue and Weston Street at about 3:30 p.m., he saw a man named Willis Davis who helped him make a drug buy 30 minutes earlier. Davis asked Detective Wiersema if he wanted to buy more drugs, and Detective Wiersema replied that he did. Davis led Detective Wiersema down Division Avenue to Oakes Street and pointed out a man, later identified as defendant, who was wearing a white hat and standing in the doorway of a vacant storefront. Davis told Detective Wiersema that defendant had "really good stuff," and as they approached Detective Wiersema took note of what defendant looked like for future identification.

Defendant asked Detective Wiersema what he wanted, and Detective Wiersema told him that he had $25. Defendant failed to respond, and it appeared to Detective Wiersema that defendant did not want to sell drugs to a stranger. Davis apparently came to the same conclusion, so he told

Detective Wiersema to give him the money, and Detective Wiersema complied. Defendant then pulled a bag out of his pants and took out a rock of crack cocaine. Davis gave defendant the $25, defendant gave Davis the drugs, and Davis and Detective Wiersema walked away. Davis took a small piece of the rock as "payment" for helping with the drug buy, gave Detective Wiersema the rest of the cocaine, and they parted ways. Lieutenant Wu, who was also conducting surveillance, saw the drug buy because he followed Detective Wiersema in an unmarked car throughout the operation. Another surveillance officer captured a photo of defendant right after the drug buy.

The next day Detective Wiersema was again working undercover and, at about 11:00 a.m., he was at the nearby Heartside Park when he saw defendant walk through the park and get into an older model Chevrolet Caprice. Talking into the transmitter, Detective Wiersema alerted other officers that he saw the dealer from the day before, he described the car, and told the officers to follow defendant. Lieutenant Wu spotted the Caprice and recognized defendant as the dealer from the day before, so he followed it to the intersection of Division Avenue and Oakes Street, where defendant parked and got out of the car. Lieutenant Wu ran the Caprice license plate and found that it was registered to defendant.

Officers Guppy and Smith were in their patrol car when they received a radio call to identify a person who was on foot near Division Avenue, identified as a black man wearing green, camouflage shorts and a white hat. Officer Guppy was at a stoplight on Division Avenue and quickly spotted a man who matched the description, defendant. Officer Guppy saw that defendant was smoking a cigarillo or small cigar, which he flicked onto the sidewalk. Because officers saw defendant commit a 90-day misdemeanor by littering, Officer Guppy knew that he could stop him and write him a ticket. Defendant eventually identified himself to Officers Guppy and Smith, and they confirmed his identity through a computer search of his driver's license.

Officers Guppy and Smith's body cameras captured their interactions with defendant, and Detective Wiersema later watched the bodycam footage to make sure that defendant was the same person who sold drugs to Davis on July 12, 2022. Thereafter, defendant was arrested, charged, convicted, and sentenced as described. This appeal followed.

## II. DETECTIVE WIERSEMA'S TESTIMONY

Defendant contends that Detective Wiersema gave impermissible opinion testimony that defendant was guilty of the crimes charged and that defense counsel deprived him of his right to the effective assistance of counsel for failing to object.

### A. STANDARDS OF REVIEW

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). See also MRE 103(a)(1). As defendant concedes, he did not raise an objection on this ground, so this issue is not preserved for appeal.

We review unpreserved evidentiary arguments for plain error affecting substantial rights. *People v Lowrey*, 342 Mich App 99, 108; 993 NW2d 62 (2022). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was

plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Defendant preserved his ineffective assistance of counsel argument by moving this Court to remand for a *Ginther*[1] hearing. See *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). "We review de novo the constitutional question whether an attorney's ineffective assistance deprived a defendant of his or her Sixth Amendment right to counsel." *People v Hughes*, 339 Mich App 99, 105; 981 NW2d 182 (2021) (quotation marks and citation omitted). Because no evidentiary hearing occurred, our review is limited to mistakes apparent from the record. See *id*.

## B. OPINION ON DEFENDANT'S GUILT

At the time of defendant's trial, MRE 701[2] provided as follows regarding opinion testimony of nonexpert witnesses:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Further, MRE 704 provided that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectional because it embraces an ultimate issue to be decided by the trier of fact."

Defendant was charged with delivery of less than 50 grams of cocaine under MCL 333.7401, the elements of which are (1) delivery by the defendant (2) of less than 50 grams (3) of cocaine or a mixture containing cocaine, (4) while the defendant knows he or she was delivering cocaine. See *People v Dickinson*, 321 Mich App 1, 12; 909 NW2d 24 (2017). Defendant was also charged with conspiracy to deliver less than 50 grams of cocaine under MCL 750.157a, which required the prosecutor to show that two or more people agreed to do an unlawful act. *People v Seewald*, 499 Mich 111, 117-118; 879 NW2d 237 (2016). Conspiracy to deliver less than 50 grams of a controlled substance, therefore, required the prosecutor to prove that two or more people agreed to deliver less than 50 grams of cocaine. See *id*.

Defendant maintains that Detective Wiersema repeatedly testified that defendant was guilty of the crimes charged and that this testimony was inadmissible opinion testimony that deprived the jury of its duty to determine defendant's guilt or innocence. Defendant is correct that "a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense . . . ." *People v Fomby*, 300 Mich App 46, 48; 831 NW2d 887 (2013) (quotation marks and citation omitted). But a police officer may give lay testimony about his observations in a

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] The rules of evidence were substantially amended effective January 1, 2024. ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the rules that applied at the time of defendant's trial.

criminal matter and his "opinion formed as a result of those observations." *People v Oliver*, 170 Mich App 38, 50; 427 NW2d 898 (1988), mod on other grounds 433 Mich 862 (1989) (emphasis omitted). Police officers may also "explain[] the steps of their investigations from their personal perceptions." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). This case does not present a situation like *People v Bragdon*, 142 Mich App 197, 199; 369 NW2d 208 (1985), as the prosecutor did not ask Detective Wiersema to give his opinion about defendant's guilt of the crimes or to give his opinion about the identity of people from images alone. Detective Wiersema was more akin to a res gestae witness, see *People v Long*, 246 Mich App 582, 585; 633 NW2d 843 (2001), as Detective Wiersema gave identification testimony because he was a witness to, and participant in, the transaction for which defendant was charged. He was in the best position to identify people with whom he engaged when the crime occurred. See *Fomby*, 300 Mich App at 52-53.

Further, far from opining about defendant's guilt of each element of the charged crimes, the disputed testimony merely addressed one element, the issue of identity, which is an element of every crime. See *People v Fairey*, 325 Mich App 645, 649; 928 NW2d 705 (2018). And, although the ultimate decision about whether defendant was the person who sold Detective Wiersema cocaine was for the jury, Detective Wiersema's testimony was not inadmissible merely because it touched on an issue to be decided by the jury. MRE 704.[3] Defendant has not established that the trial court plainly erred by failing to sua sponte deny admission of Detective Wiersema's identification testimony. See *Carines*, 460 Mich at 763.

Even if defendant could show clear error, defendant offers no argument that the outcome of the proceeding would have been different absent Detective Wiersema's identification testimony. Defendant has not explained how the testimony seriously affected the fairness, integrity, or public reputation of his trial or any other basis that would justify reversal. For that reason, he has not carried his burden on appeal. See *id*.

## C. ASSISTANCE OF COUNSEL

Defendant argues in the alternative that defense counsel deprived him of his right to the effective assistance of counsel by failing to object to Detective Wiersema's testimony. The entirety of defendant's argument is that defense counsel's failure to object to Detective Wiersema's testimony could not be trial strategy. As discussed, Detective Wiersema's testimony identifying defendant was admissible. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

---

[3] Detective Wiersema's statement that, "I would not be sitting here trying to prosecute somebody that I didn't believe did that particular crime," could have been construed as Detective Wiersema's opinion that defendant was guilty of the crimes charged. But, in context, Detective Wiersema was responding to defense counsel's repeated questions about whether his identification could be wrong, and Detective Wiersema's point appears to have been that he would not be testifying if he did not think he identified the correct person.

## III. PRETEXTUAL STOP

Defendant next argues that when Officers Guppy and Smith stopped him they violated his Fourth Amendment rights.

### A. PRESERVATION AND STANDARD OF REVIEW

Defendant did not raise a Fourth Amendment claim in the trial court, so this issue is not preserved for appeal, see *People v Hughes*, 506 Mich 512, 522-523; 958 NW2d 98 (2020), and we apply the plain-error rule, *Carines*, 460 Mich at 763-764.

### B. DISCUSSION

The Fourth Amendment of the United States Constitution, US Const, Am IV, and the Michigan Constitution, Const 1963, art 1, § 11, guarantee the right of persons to be secure against unreasonable searches and seizures. Defendant contends that Officer Guppy conducted an unreasonable search when he stopped defendant on the pretext of littering when he actually wanted to identify defendant as part of the prior day's drug buy.

Defendant recognizes that this stop did not amount to a constitutional violation in Michigan, but argues that this Court should reverse its holding in *People v Haney*, 192 Mich App 207, 209-210; 480 NW2d 322 (1991), an opinion that addressed the validity of a pretextual stop, which it defined as "[w]hen police lack the reasonable suspicion necessary to support a stop and use a minor violation to stop and search a person or place for evidence of an unrelated serious crime . . . ."

In addressing the merits of the issue, the *Haney* Court observed that most federal circuits applied an objective analysis to determine whether a stop was pretext, which the *Haney* Court adopted:

> the reasonableness of an arrest depends on the existence of two objective factors. First, did the arresting officer have probable cause to believe that the defendant had committed or was committing an offense? Second, was the arresting officer authorized by state or municipal law to effect a custodial arrest for the particular offense? If these two factors are present, we believe that a stop or arrest is necessarily reasonable under the Fourth Amendment. In other words, as long as the police are doing no more than they are legally permitted and objectively authorized to do, a stop or arrest is constitutional. [*Id*. at 210]

Because the officer in *Haney* had probable cause to believe that the defendant committed a traffic offense by failing to use his turn signal, and because the officer was authorized to make a stop and custodial arrest for the offense, the stop did not violate the Fourth Amendment. *Id*. at 210-211.

Defendant argues that New Mexico and Washington have adopted a better test for whether a stop or arrest is constitutional. Courts in both states have ruled that pretextual searches are unconstitutional under their state constitutions and that an officer's subjective intent is a relevant part of the inquiry into whether a traffic stop was pretextual. See *State v Ochoa*, 146 NM 32, 37-39, 44-45; 2009-NMCA-002; 206 P3d 143 (NM App, 2008), and *State v Arreola*, 176 Wash 2d

284, 290-291, 296-297; 290 P3d 983 (2012). We decline defendant's invitation to overrule *Haney* or to adopt the tests in *Ochoa* and *Arreola*. First, the *Ochoa* and *Arreola* courts ruled that their state constitutional provisions provided more protections than the Fourth Amendment, while "[a]bsent a compelling reason, Michigan courts must construe Const 1963, art 1, § 11 to provide the same protection as that secured by the Fourth Amendment." *People v Brcic*, 342 Mich App 271, 277; 994 NW2d 812 (2022). Accordingly, unlike New Mexico and Washington, Michigan caselaw does not delineate broader protections from warrantless stops than those recognized by the United States Supreme Court.

Second, the traffic stop here was unlike those in *Ochoa* and *Arreola*. In his appeal brief, defendant repeatedly asserts that Officer Guppy testified that he saw defendant toss a cigarette out of his car, but Officer Guppy testified that he received a description of a man on foot, and he spotted a person who matched that description standing on the sidewalk. Unlike in *Ochoa* and *Arreola*, Officer Guppy was not relying on ubiquitous traffic laws for a reason to stop defendant to see if he was committing another crime. Defendant's cited cases are also inapposite because Officer Guppy was not attempting to investigate a tip or hunch that defendant was committing another suspected crime when he stopped him. Rather, two other law enforcement officers already saw defendant selling drugs to an undercover officer as well as littering before Officer Guppy stopped defendant to talk.

Defendant concedes that, pursuant to *Haney*, Officer Guppy did not violate the Fourth Amendment, and we reach the same conclusion. See also MCR 7.215(C)(2) and (J)(1). Defendant has not established plain error affecting substantial rights. See *Carines*, 460 Mich at 763.[4]

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises numerous arguments of ineffective assistance of counsel, but none have merit.

### A. STANDARD OF REVIEW AND LEGAL PRINCIPLES

As discussed, we review ineffective assistance arguments de novo for mistakes apparent on the record, see *Hughes*, 339 Mich App at 105, and to succeed defendant has to show that counsel's performance fell below an objective standard of reasonableness and that, but for defense counsel's deficient performance, the outcome of his trial would have been different. See *id*. at 105-106. "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136

---

[4] In his Standard 4 brief, defendant argues that defense counsel was ineffective for failing to object to the admission of still images taken from Officer Smith's bodycam video. According to defendant, the images were "fruit of the poisonous tree" because Officer Guppy used a pretext of stopping defendant for littering to gather information for the drug charges. Because Officer Guppy did not violate defendant's constitutional rights when he stopped defendant after witnessing him commit a crime, it would have been futile for defense counsel to move to exclude photographic evidence gathered from that encounter. See *Ericksen*, 288 Mich App at 201.

-6-

(2012). We will not substitute our own judgment for that of counsel or use the benefit of hindsight in assessing defense counsel's competence. *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

## B. DISCUSSION

Defendant maintains that witnesses testified that three women were with the person who sold cocaine to Detective Wiersema, but defense counsel failed to identify and interview them before trial. "[D]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Muhammad*, 326 Mich App 40, 66; 931 NW2d 20 (2018) (citation omitted).

Nothing in the record indicates whether defense counsel located or interviewed any of the three women who appeared to act as lookouts on the day Detective Wiersema bought drugs from defendant. Nor does defendant explain, or provide an offer of proof to show, that any of the three witnesses would have testified in his favor. "Without some indication that a witness would have testified favorably, a defendant cannot establish that counsel's failure to call the witness would have affected the outcome of his or her trial." *People v Carll*, 322 Mich App 690, 703; 915 NW2d 387 (2018).

Nor was counsel ineffective for failing to introduce photos of the storefront where Detective Wiersema and Davis bought the drugs. According to defendant, because the doorways were recessed, Detective Wiersema and Lieutenant Wu could not have seen him engage in the transaction. However, defendant did not provide this Court with the photographs that he alleges were in defense counsel's possession. The record does not disclose that defense counsel's failure to introduce the photographs amounted to deficient performance. Although defendant describes the area in which the drug deal occurred as a "crevice," this does not accurately describe the location described in the record. It appears instead that the doors were recessed and that the drug deal occurred in a vestibule open to the sidewalk in front of one of the doors. Witnesses testified that the area was wide enough to see the drug transaction and those involved in it. Again, decisions about what evidence to present are presumed to be matters of trial strategy. *Muhammad*, 326 Mich App at 66. On the available record, it would have been reasonable for defense counsel to avoid providing photographs of the vestibule if, as other evidence showed, the area was visibly wide enough for Detective Wiersema and Lieutenant Wu to see the drug buy. We will not second-guess defense counsel's decisions on matters of trial strategy when he has not presented factual support for his claim. See *id*.

Defendant also maintains that defense counsel provided ineffective assistance because he failed to adequately investigate or present his defense of misidentification. "Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Thorne*, 322 Mich App 340, 347; 912 NW2d 560 (2017) (quotation marks and citation omitted). "Counsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Trakhtenberg*, 493 Mich at 52 (quotation marks and citation omitted).

Defendant argues that defense counsel failed to follow the principles set forth in *People v Kachar*, 400 Mich 78, 97; 252 NW2d 807 (1977), i.e., that in cases involving impermissibly suggestive pretrial identification procedures, the trial court should consider various factors to be determined by clear and convincing evidence that the witness's "in-court identification has a sufficient independent basis to purge the taint caused by the illegal confrontation." Defendant's reliance on *Kachar* is misplaced because this case did not involve a previous impermissibly suggestive lineup. Nothing in the record indicates that the trial court could not admit any of the witness's in-court identifications because of previous suggestive identification procedures. For that reason, *Kachar* does not apply.

Next, defendant asserts that defense counsel should have called an expert witness to testify about the unreliability of eyewitness identifications. Defendant provides no offer of proof that an expert would testify in his favor regarding eyewitness identifications by law enforcement officers involved in undercover drug operations. But "questions of eyewitness identification, fading memories, witnesses' body language, and the like involve obvious human behavior from which jurors can make commonsense credibility determinations." *People v Kowalski*, 492 Mich 106, 143; 821 NW2d 14 (2012) (quotation marks and citation omitted).

Here, defense counsel rigorously cross-examined prosecution witnesses about their identification of defendant. Defendant has not shown that his strategic decision to use cross-examination rather than an expert witness to create reasonable doubt about the identification of defendant fell below an objective standard of reasonableness. *People v Cooper*, 236 Mich App 643, 658; 601 NW2d 409 (1999). "Although defendant believes that additionally presenting an expert on eyewitness testimony would have been helpful, and defendant may even be right, that counsel could conceivably have done more, or that a particular trial strategy failed, does not mean counsel's performance was deficient." *People v Blevins*, 314 Mich App 339, 351; 886 NW2d 456 (2016).

Defendant next argues that defense counsel failed to challenge both the prosecutor's late notice of intent to seek an enhanced sentence under MCL 769.13, and one of his underlying convictions. Defendant relies on MCL 769.13, which provides, in relevant part:

> (1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

A felony information must be filed after a defendant's preliminary examination pursuant to MCL 767.42(1). Because defendant waived his preliminary examination on October 20, 2022, any initial information had to be filed on or after that date. The prosecutor filed an "amended" information on November 9, 2022, 20 days after defendant waived his preliminary examination. For that reason, the information—including the fourth-offense habitual offender notice—was timely filed under MCL 769.13(1), because it was filed within 21 days of when any initial information could have been filed. Although defendant asserts that the notice was untimely, he

fails to explain his reasoning, other than claiming that the prosecutor violated the 21-day rule. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . ." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

According to defendant his counsel was also ineffective for failing to challenge one of the convictions supporting the sentence enhancement as permitted under MCL 769.13(4). Defendant specifically asserts that, although he was convicted of unlawful sexual intercourse with a person under 18 under Cal Penal Code § 261.5(c), which is a felony, there were extenuating circumstances surrounding his conviction and it would therefore not constitute a felony in Michigan. Cal Penal Code § 261.5(a) states that, "[f]or the purposes of this section, a 'minor' is a person under 18 years of age and an "adult" is a person who is 18 years of age or older."

Under MCL 769.12(1), the enhancement provision for a defendant's previous felonies applies

> [i]f a person has been convicted of any combination of 3 or more felonies or attempts to commit felonies, whether the convictions occurred in this state or would have been for felonies or attempts to commit felonies in this state if obtained in this state, and that person commits a subsequent felony within this state . . . .

Defendant provides no offer of proof to support his argument that his crime in California would not be considered a felony in Michigan. The record reflects that defendant offered no argument at his sentencing hearing about relying on this California felony conviction as a basis to enhance his sentence. Further, the trial court received a certified copy of the conviction, which apparently indicated that defendant was convicted of a felony, and nothing in the record suggests that, as defendant now argues, the crime involved a consensual relationship between defendant and a 17-year-old girl. The age of the victim and other facts that defendant asserts about that case are not available for this Court's review, and it is not apparent from the record that defense counsel at sentencing knew about those facts and failed to raise them. Because defendant did not meet the burden to establish a factual predicate, he failed to show that his counsel provided ineffective assistance.

Defendant reiterates arguments set forth earlier and maintains that defense counsel was ineffective for failing to object to still images taken from Officer Smith's bodycam video. According to defendant, the images were "fruit of the poisonous tree" because Officer Guppy used a pretext of stopping defendant for littering to gather information for the drug charges. But Officer Guppy did not violate defendant's constitutional rights when he stopped defendant on July 13, 2022, after witnessing him commit a crime. Further, the still photos were relevant because they were taken the day after the drug deal. For those reasons, it would have been futile for defense counsel to move to exclude photographic evidence gathered from that encounter. See *Ericksen*, 288 Mich App at 201.

For the reasons stated, defendant has not established that defense counsel's conduct fell below an objective standard of professional reasonableness or that, but for counsel's errors, the outcome of his trial would have been different. See *Hughes*, 339 Mich App at 105-106.

## V. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecutor presented insufficient evidence to support his conviction of conspiracy to deliver less than 50 grams of cocaine under MCL 750.157a(a), and that defense counsel was ineffective for failing to raise this argument in his motion for directed verdict.

## A. STANDARDS OF REVIEW

We review de novo a challenge to the sufficiency of the evidence. When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the elements of the crime were proven beyond a reasonable doubt. [A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. [*People v Ventour*, 349 Mich App 417, 425; 27 NW3d 660 (2023) (quotation marks and citations omitted; alteration in original).]

As discussed, we review de novo whether defense counsel deprived a defendant of his Sixth Amendment right to counsel. *Hughes*, 339 Mich App at 105. Because no evidentiary hearing occurred, our review is limited to mistakes apparent from the record. See *id*.

## B. DISCUSSION

MCL 750.157a provides that "[a]ny person who conspires together with 1 or more persons to commit an offense prohibited by law . . . is guilty of the crime of conspiracy . . . ." To prove conspiracy, the prosecutor had to show that defendant agreed with at least one other person to deliver less than 50 grams of a controlled substance. See *Seewald*, 499 Mich at 118. An agreement may be inferred from circumstantial evidence. *People v Cotton*, 191 Mich App 377, 393; 478 NW2d 681 (1991). "Conspiracy is a specific-intent crime, because it requires both the intent to combine with others and the intent to accomplish the illegal objective." *People v Mass*, 464 Mich 615, 629; 628 NW2d 540 (2001). However, "[d]irect proof of a conspiracy is not required; rather, proof may be derived from the circumstances, acts, and conduct of the parties." *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011) (quotation marks and citation omitted).

The evidence was sufficient to show that defendant tacitly conspired with Davis to deliver less than 50 grams of cocaine to Detective Wiersema. From the conduct of the participants, it was clear that Davis made the drug buy on behalf of Detective Wiersema with the knowing participation of defendant. A reasonable jury could conclude from these facts that defendant agreed with Davis to engage in a transaction that would result in the delivery of the cocaine to Detective Wiersema. Drawing all reasonable inferences and credibility choices in support of the jury verdict, ample evidence supported the jury's determination that defendant was guilty of conspiracy. See *People v Baskerville*, 333 Mich App 276, 282-283; 963 NW2d 620 (2020).

Because sufficient evidence supported the jury's verdict, defense counsel was not ineffective for failing to raise this as an argument when he moved for a directed verdict. See *Ericksen*, 288 Mich App at 201.

## VI. PROSECUTORIAL ERROR

Defendant next asserts that the prosecutor engaged in misconduct and that defense counsel was ineffective for failing to object.

### A. PRESERVATION AND STANDARDS OF REVIEW

To preserve an argument of prosecutorial error for appeal, a defendant must make a contemporaneous objection and request a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Because defendant concedes that defense counsel did not preserve his arguments for appeal because he failed to object to most instances of errors cited in his Standard 4 Brief, we review his arguments for plain error. *People v Thurmond*, 348 Mich App 715, 735-736; 20 NW3d 311 (2023). We review de novo whether defense counsel deprived a defendant of his Sixth Amendment right to counsel. *Hughes*, 339 Mich App at 105.

### B. DISCUSSION

"Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). "The test for prosecutorial error is whether the defendant was denied a fair trial. A prosecutor commits error by abandon[ing] his or her responsibility to seek justice and, in doing so, den[ying] the defendant a fair and impartial trial." *Thurmond*, 348 Mich App at 736 (quotation marks and citations omitted; alterations in original). "The prosecutor may not make a statement of fact that is unsupported by the evidence." *People v Lane*, 308 Mich App 38, 67; 862 NW2d 446 (2014). But "[p]rosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *Unger*, 278 Mich App at 236. Further, prosecutors "are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id*.

Defendant maintains that the prosecutor should not have said during his opening statement that he anticipated that defendant would claim that he was not the person who sold Detective Wiersema drugs on July 12, 2022. If a prosecutor makes a statement of fact during an opening statement that is not proven at trial, then the defendant's conviction will be reversed if the prosecutor acted in bad faith or if the defendant was unfairly prejudiced by the error. *People v Wolverton*, 227 Mich App 72, 78; 574 NW2d 703 (1997). Defendant has not shown plain error because defendant's theory at trial was that he was not the person who sold Detective Wiersema drugs, and he presented Davis's testimony to show that defendant was not the person who sold drugs to Detective Wiersema. Because the prosecutor's remarks were supported by the evidence, no error occurred. See *Unger*, 278 Mich App at 236.

He has also not shown that the prosecutor engaged in misconduct by anticipating that Davis would testify that he did not know defendant and that defendant was not the person who gave him drugs on July 12, 2022. During his direct examination, Davis testified that he did not remember interacting with defendant at all to buy drugs and he specifically agreed that the person sitting at the defense table—defendant—was not a person involved in selling him drugs. During cross-examination, Davis admitted that he knew defendant from talking to him in his neighborhood. The prosecutor's question about Davis's relationship with defendant appears to have been precipitated

by Davis smiling and nodding at defendant while Davis took his oath to testify truthfully at trial. In any event, the prosecutor stated that he merely *suspected* that Davis would deny a relationship with defendant, which was not a statement of fact. Defendant was also not prejudiced by the prosecutor's opening statement because it was not unfairly prejudicial. Whether Davis admitted that he knew defendant, the crux of his testimony was that he did not engage in any drug sales involving defendant. For those reasons, defendant has not shown plain error.[5]

According to defendant, the prosecutor improperly discredited Davis during his cross-examination by asking him whether he was lying about engaging with Detective Wiersema twice or if Detective Wiersema was lying about engaging with Davis four times. It is generally improper for the prosecutor to ask a *defendant* whether he believes that the prosecution witnesses lied because it is tantamount to asking the defendant to comment on the credibility of the prosecution witnesses. *People v Buckey*, 424 Mich 1, 7 n 3, 16-17; 378 NW2d 432 (1985). Assuming the rule applies to witnesses, any error does not require reversal if the witness handles the question well, defense counsel fails to object, and any error could have been cured by a timely jury instruction. *Id*. at 17-18. That is the case here.

Further, defendant has not shown that the prosecutor's conduct affected the outcome of the proceeding. See *Thurmond*, 348 Mich App at 736. Davis's testimony that he only engaged in two drug deals with Detective Wiersema plainly conflicted with Detective Wiersema's testimony that Davis brought him to four drug dealers, so the issue of which witness was more credible was already apparent to the jury. Further, the question was not so prejudicial to defendant that it denied him a fair trial. Davis insisted that he was correct in his assertion and that Detective Wiersema was wrong. Under the circumstances, the question appears to have been primarily for the purpose of highlighting a conflict in Davis's version of events. In any case, the trial court instructed the jury in its final instructions that judging the credibility of witnesses was its responsibility. "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Accordingly, defendant is not entitled to relief.

We also see no merit to defendant's argument that the prosecutor's closing argument was improper. The prosecutor stated that the law enforcement witnesses had years of experience, that Davis was a drug user, and that Davis's drug use could have impacted his memory. A prosecutor may argue reasonable inferences from evidence in the record and is not confined to do so in the "blandest of all possible terms." *People v Aldrich*, 246 Mich App 101, 112; 631 NW2d 67 (2001). Evidence showed that the officers had the experience stated by the prosecutor, and Davis admitted that he smoked crack 10 or more times a day in July 2022. Although defendant asserts that no expert testified that crack cocaine use can impact memory, the prosecutor made a reasonable inference from the evidence that Davis's memory could be impacted because of his heavy use of crack cocaine. Moreover, contrary to defendant's additional assertion, at no point did the prosecutor use the "prestige" of his office to suggest that he had special knowledge that his

---

[5] Defendant also complains that the prosecutor vouched for the credibility of his own witnesses, but he fails to set forth any statements by the prosecutor that constituted improper vouching. This argument is abandoned. See *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004).

-12-

witnesses testified truthfully. Having failed to establish plain error, defendant is not entitled to relief on his claims of prosecutorial error. See *Thurmond*, 348 Mich App at 736.

## VII. IN-COURT IDENTIFICATION

Defendant asserts that it was plain error for the trial court to admit Detective Wiersema's in-court identification of defendant.

### A. PRESERVATION AND STANDARD OF REVIEW

To preserve an argument that a witness's in-court identification was improper, a defendant must object to the identification. *People v McCray*, 245 Mich App 631, 638; 630 NW2d 633 (2001). Defendant concedes that he did not preserve this issue for appeal. See *id*. Our review is for plain error. *Carines*, 460 Mich at 763-764.

### B. DISCUSSION

To support his argument, defendant primarily relies on an opinion issued after his trial, *People v Posey*, 512 Mich 317; 1 NW3d 101 (2023). In *Posey*, the Court held that a first-time, in-court identification implicates a defendant's due-process rights in the same way as a pretrial identification procedure that is unduly suggestive. *Id*. at 339 (opinion by BOLDEN, J.); *id*. at 361 (CAVANAGH, J., concurring in part and concurring in the judgment); *id*. at 390 (WELCH, J., concurring in part, dissenting in part, and concurring in the judgment).

But, defendant's assertion that Detective Wiersema identified defendant for the first time in court is inaccurate, and the facts of this case do not raise the kinds of identification concerns articulated in *Posey*. Detective Wiersema did not make his first identification of defendant in court, he did not previously misidentify defendant, and he did not participate in an unduly suggestive identification procedure. Rather, Detective Wiersema identified defendant the day after the drug deal, his lieutenant confirmed the identification through his own observation of the drug deal, a photo was taken of defendant immediately after the drug deal, police obtained defendant's name pursuant to the identifications made by Detective Wiersema and Lieutenant Wu, and Detective Wiersema confirmed that Officer Guppy stopped the correct person following his identification. For these reasons, defendant cannot show that it was plain error for the trial court to allow Detective Wiersema to make an in-court identification of defendant.

Moreover, defendant has not shown that it affected his substantial rights. Defendant was identified by both Detective Wiersema and Lieutenant Wu the day after the drug deal and defendant does not dispute the validity of the in-court identifications of both Lieutenant Wu and Officer Guppy. Further, the jury was shown a photograph of the perpetrator right after the drug deal, as well as photographs of defendant from Officer's Smith's bodycam video for comparison. Because there was substantial evidence of defendant's participation in the crimes, he cannot show

that the outcome of the trial would have been different absent Detective Wiersema's in-court identification. For that reason, defendant is not entitled to relief on this issue.[6]

## VIII. FAILURE TO DISCLOSE EVIDENCE

Defendant avers that the prosecutor violated *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), by failing to turn over exculpatory evidence and that defense counsel was ineffective for failing to move to suppress the lab report and testimony of the scientist, Sara Kozmor, who tested the substance that defendant sold Detective Wiersema.

### A. PRESERVATION AND STANDARD OF REVIEW

To preserve a *Brady* violation argument, a defendant must move the trial court for a new trial or for relief from judgment on this ground. *People v Burger*, 331 Mich App 504, 516; 953 NW2d 424 (2020). Defendant did not do so; therefore, we review for plain error affecting substantial rights. *Id*.

### B. DISCUSSION

"To establish a *Brady* violation, a defendant must show that (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *Thurmond*, 348 Mich App at 738 (quotation marks and citation omitted). "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *People v Chenault*, 495 Mich 142, 149-150; 845 NW2d 731 (2014) (quotation marks and citation omitted). Our Supreme Court discussed the factors as follows:

> Evidence is favorable to the defense when it is either exculpatory or impeaching. To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. This standard does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal . . . . The question is whether, in the absence of the suppressed evidence, the defendant received a fair trial, understood as a trial resulting in a verdict worthy of confidence. [*Id*. at 150-151 (quotation marks and citations omitted).]

At trial, Kozmor testified that she first weighed the suspected cocaine and then conducted a microcrystal test that showed that the substance was cocaine. As a secondary test to verify the results of the microcrystal test, Kozmor conducted a Fourier Transform Infrared (FTIR) Spectroscopy test, which displayed a spectrum that she matched to cocaine using the library of

---

[6] For the reasons discussed, defense counsel was not ineffective for failing to make a futile objection on this ground. See *Ericksen*, 288 Mich App at 201.

known drug sample spectrums. Defendant argues that the prosecutor turned over a one-page summary of Kozmor's findings but should have turned over the "library of line graphs" of known drug-sample spectrums that Kozmor used to compare her FTIR test results.[7] According to defendant, the failure to provide the library samples meant that he could not determine whether Kozmor interpreted the FTIR test results correctly or whether the machine was properly calibrated.

Defendant, however, has not shown that the evidence allegedly withheld was exculpatory or impeaching. See *Chenault*, 495 Mich at 150. Defendant merely states that the lack of access to the library prevented him from challenging Kozmor's conclusion that the substance was cocaine. But this assertion is not a showing that the evidence was either exculpatory or impeaching. Defendant does not contend that Kozmor's testimony reflected some uncertainty about the validity or accuracy of the library of known drug samples, and Kozmor did not testify that she had difficulty because the chemical makeup did not clearly match known samples.

Moreover, defendant does not assert how his access to the known-drug-sample library would show that Kozmor's FTIR test was in any way inaccurate. Indeed, defendant's contention about his need to see the sample library seems more akin to a fishing expedition. Defendant surmises that he may have been able to challenge Kozmor about her conclusion or the calibration of the FTIR machine if had had the library, but he fails to explain how or why that evidence was actually exculpatory or impeaching or why it would be favorable to him through any specific explanation of his anticipated use of the evidence. At no time at trial did defendant take the position that he was selling a substance that was not cocaine. Discovery does not permit a party to go on "a fishing expedition to see what may turn up." *People v Stanaway*, 446 Mich 643, 680; 521 NW2d 557 (1994) (quotation marks and citation omitted). Defendant also offers no basis to conclude that, if he had access to the library, it would result in a not guilty verdict or would otherwise undermine confidence in his conviction. See *Chenault*, 495 Mich at 150.

Within his *Brady* argument, defendant also asserts that Kozmor's testimony violated MRE 703. Contrary to defendant's arguments, Kozmor did not testify as an expert witness. Rather, she testified as the person who conducted lab tests to determine the contents of the substance defendant sold Detective Wiersema. Had she testified as an expert in forensic science, defendant raises no argument that Kozmor lacked a sound evidentiary basis for her conclusion, and he does not explain how having the library of known drug spectrums would make her testimony more or less in accord with established facts in evidence. Accordingly, we are not persuaded by defendant's argument regarding MRE 703.

Further, defendant has not shown why defense counsel's conduct fell below an objective standard of reasonableness for failing to move to suppress the Kozmor's testimony. Defendant makes no argument that it is the professional norm to obtain state forensic lab library materials when a substance is identified. He also makes no persuasive argument that, had defense counsel demanded the library of known drug sample spectrums, it would have resulted in a different

---

[7] Defendant has not filed in this Court a copy of the one-page summary that he claims defense counsel received.

verdict. Defendant is not entitled to relief on the basis of ineffective assistance of counsel. See *Hughes*, 339 Mich App at 105-106.

## IX. RIGHT TO CONFRONT WITNESS

According to defendant, the trial court should not have admitted Kozmor's lab report or testimony because the prosecutor failed to present the testimony of another, unnamed person who worked in the forensic lab.

## A. PRESERVATION AND STANDARD OF REVIEW

Defendant did not raise an objection that Kozmor's testimony or lab report were inadmissible under the Confrontation Clause, so this issue is unpreserved. See *Aldrich*, 246 Mich App at 113. We review an unpreserved Confrontation Clause argument for plain error affecting substantial rights. *People v Walker (On Remand)*, 273 Mich App 56, 65-66; 728 NW2d 902 (2006).

## B. DISCUSSION

Defendant bases his argument on Kozmor's testimony about her process when conducting lab tests on evidence. After Kozmor explained that no other lab technician participated in conducting tests on the cocaine, the prosecutor asked Kozmor what she did with the evidence after she completed her testing, and Kozmor testified:

> So after I do my test, I will put into this packaging the separated packaging. Now I will not fully seal this up until my exam review has been done. So every exam that we do, is verified by another fully trained controlled substance analyst. So she looks over all of my data to make sure everything is correct, and then I will seal it all in the packaging, and then it will be placed into secure storage waiting for the agency to come collect it.

Defendant asserts that this testimony required the prosecutor to present the testimony of the other lab analyst.

The Confrontation Clause applies to testimonial hearsay statements. *Ohio v Clark*, 576 US 237, 244-245; 135 S Ct 2173; 192 L Ed 2d 306 (2015). Generally, a statement is testimonial if it is prepared specifically for use at trial. *Melendez-Diaz v Massachusetts*, 557 US 305, 324; 129 S Ct 2527; 174 L Ed 2d 314 (2009). Certificates of lab results following forensic testing are testimonial because they are created "under circumstances which would lead an objective witness reasonably to believe that the statement[s] would be available for use at a later trial." *Id.* at 311 (quotation marks and citation omitted).

Defendant has not shown that another lab technician or analyst made a testimonial statement that the substance that defendant sold to Detective Wiersema was cocaine. Rather, the lab report was the statement showing the results of Kozmor's testing, she was the author of the report, and she conducted all the tests on the substance. For those reasons, Kozmor was the person whom defendant had the right to confront to question about the contents of, and conclusion in, the

-16-

report. See *Bullcoming v New Mexico*, 564 US 647, 663; 131 S Ct 2705; 180 L Ed 2d 610 (2011). The other lab analyst did not offer a certification of Kozmor's lab work, did not write a note stating that Kozmor's lab tests were verified, and did not even add a signature stating that she reviewed or verified the accuracy of Kozmor's results. Therefore, another lab worker did not make an out-of-court testimonial statement.

Further, Kozmor's mere reference to another lab worker checking her work was not offered for the truth of Kozmor's lab report or her finding that the substance was cocaine. See *Smith v Arizona*, 602 US 779, 792-793; 144 S Ct 1785; 219 L Ed 2d 420 (2024). Rather, Kozmor made the reference without prompting by the prosecutor as she explained her process before resealing the evidence. Defendant has not shown that it was plain error for the trial court to admit Kozmor's lab report and testimony because he has not shown that his right of confrontation was violated.

Defendant has also failed to establish that defense counsel was ineffective for failing to object to Kozmor's testimony because the cases defendant cites do not support the conclusion that defendant's confrontation right was violated. Further, deciding not to demand the presence of the other lab technician who would likely confirm Kozmor's conclusion was a matter of sound trial strategy that we will not second-guess on appeal. See *Muhammad*, 326 Mich App at 66.

## X. JURORS CHALLENGED FOR CAUSE

Finally, defendant argues that the trial court erred by excusing for cause two prospective jurors.

### A. PRESERVATION AND STANDARD OF REVIEW

Defendant never raised an argument that the jurors' criminal histories should not be grounds to dismiss them for cause, so defendant failed to preserve this issue for appeal. See *People v Eccles*, 260 Mich App 379, 381-382; 677 NW2d 76 (2004). We review this argument under the plain-error rule. See *id.*

### B. DISCUSSION

Defendant acknowledges that the trial court did not clearly err by excusing the two jurors because its decision complied with this Court's ruling in *Eccles*. But defendant argues that *Eccles* was wrongly decided and that we should find plain error.

In *Eccles*, 260 Mich App at 380-381, the defendant argued that the trial court improperly excused jurors under MCR 2.511(D)(11) (now MCR 2.511(E)(10)), which left defendant with only one black person seated as a juror. The prosecutor successfully challenged four potential jurors for cause because each prospective juror "is or has been a party adverse to the challenging party or attorney in a civil action, or has complained of or has been accused by that party in a criminal prosecution." *Id.* at 381 (quotation marks and citation omitted). Specifically, the prosecutor's office initiated misdemeanor criminal proceedings against each of the four challenged jurors. *Id.* On appeal, Eccles took the position that a prosecutor is not a "party in a criminal prosecution" within the meaning of MCR 2.511(D)(11). *Id.*

This Court in *Eccles* first stated that it would interpret MCR 2.511(D)(11) "in accordance with the ordinary and approved usage of the language employed, and in light of its purpose and the object to be accomplished by its operation." *Id*. at 382 (quotation marks and citations omitted). This Court next observed that MCR 2.511(D) provides challenges to jurors who are not qualified by statute to serve as a juror and those who are biased by prejudice or other interests or limitations that interfere with the juror's ability to render an impartial verdict. *Id*. Once a party shows that a potential juror falls within one of those two categories, the *Eccles* Court asserted that the trial court no longer has the discretion to empanel a juror, but, instead, must excuse the juror for cause. *Id*. at 383. The *Eccles* Court explained that the court rule specifically provides that, if a potential juror has been criminally prosecuted, it raises a concern about that juror's ability to render a fair and impartial verdict. *Id*.

As in this case, Eccles argued that the prohibition against jurors who have been criminally prosecuted should not apply to county prosecutors in criminal cases. *Id*. But the *Eccles* Court disagreed and explained:

> Unlike cases initiated in the civil arena, where any number of individual attorneys may be chosen to represent a particular party, it is the prosecuting attorney who represents the people in each and every criminal prosecution. This "oneness" of party and attorney explains the different language employed by the rule for criminal, as opposed to civil, actions and, when viewed in conjunction with the purpose underlying a challenge for cause as discussed above, militates against the argument advanced by defendant. [*Id*.]

In other words, the reference to criminal prosecutions in MCR 2.511(D)(11), by its plain language, was intended to allow challenges for cause to those potential jurors in criminal cases who have been prosecuted in the same jurisdiction because that interferes with the juror's ability to render a fair and impartial verdict. *Id*. The *Eccles* Court further stated that it cannot amount to plain error for the trial court to excuse a juror for cause once a ground has been shown under MCR 2.511(D), because the trial court has no discretion in the matter. *Id*. at 365-386.

Here, two potential jurors were subject to criminal prosecutions in Kent County, and the prosecutor challenged them for cause. Because the trial court was required to dismiss both jurors for cause under MCR 2.511(E)(10), and this Court's ruling in *Eccles*, 260 Mich App at 381-382, defendant has not shown plain error, and he is not entitled to relief on this issue.

Further, *Eccles* was not wrongly decided. The Court in *Eccles* applied the plain language of the court rule. Further, MCR 2.511(E)(10) does not conflict with the intent of our Legislature as expressed in MCL 600.1307a(1). Although the statute sets forth minimum requirements to serve on a jury, it does not state that every person who meets those requirements must be empaneled as a juror. MCR 2.511(E) only excuses an otherwise qualified juror from service if cause is shown under one of the grounds set forth therein. Defendant has not shown that the court

-18-

rule violates the state or federal constitutions or that this Court's interpretation of it in *Eccles* was unsound.

Affirmed.

/s/ Christopher M. Murray
/s/ James Robert Redford
/s/ Michelle M. Rick